RECEIVED
2022 MAY 20 PM 4:21
U.S. COURT OF APPEALS

Peter Liounis
Reg No, 48332-054
FCI - Gilmer
P.o, Box 6000
Glenville WV 26351

May 16, 2022

clerks office
united states Court of Appeals
united states Courthouse
40 Foley square
New York NY 10007

22-716

certified mail/signature Confirmation No, 7021 2720 0001 6053 2772

Dear clerk of the Court,

Please file the enclosed : Pro-Se Appellant
Appendix and certificate of Service, Also enclosed
is a white envelope with the words "Pre-sentence
Investigation Report" written on the outside of the
Envelope, Inside the white envelope are the pages
of the PSR that were cited in Appellant's Pro-se
Brief, Thank you Kindly, we are on full lockdown
here at FCI-Gilmer and Appellant is doing his best
to Comply with the Pro-Se rules of the Court,

Very Sincerely
Pete
Peter Liounis Pro-se

PRO-SE APPELLANT APPENDIX

Gov't 320-1 at 1 .................................. Z-1
Gov't 320-1 at 29 ................................. Z-2
Gov't 320-1 at 7 .................................. Z-3
Gov't 320-1 at 26 ................................. Z-4
Gov't 320-1 at 22 ................................. Z-5
Gov't 320-1 at 83 ................................. Z-6
Gov't 320-1 at 89 ................................. Z-7
Gov't 320-1 at 85 ................................. Z-8
Gov't 320-1 at 28 ................................. Z-9
Appellant DE 323 Exhibit B ....................... Z-10
Appellant DE 323 Exhibit A ....................... Z-11
[324] District Court order 3/15/22 ............... Z-12
Pro-Se Appellant Brief Exhibit 2 ................. Z-13
Pro-Se Appellant Brief Exhibit 3 ................. Z-14
Pro-Se Appellant Brief Exhibit 1 ................. Z-15
Pro-Se Appellant Brief Exhibit 7 ................. Z-16
Pro-Se Appellant Brief Exhibit 4 ................. Z-17
Pro-Se Appellant Brief Exhibit 8 ................. Z-18
Pro-Se Appellant Brief Exhibit 5 ................. Z-19
Pro-Se Appellant Brief Exhibit 6 ................. Z-20
Pro-Se Appellant Brief Exhibit 9 ................. Z-21
Appellant PSR page 17 ............................ Z-22
Appellant PSR page 18 ............................ Z-23
Appellant PSR page 19 ............................ Z-24
Appellant PSR page 20 ............................ Z-25

Page 1 of 2

PRO-SE APPELLANT APPENDIX

Appellant PSR page 21 . . . . . . . . . . . . . Z-26

Appellant PSR page 22 . . . . . . . . . . . . . Z-27

Appellant PSR page 13 . . . . . . . . . . . . . Z-28

Appellant J&C page 6 . . . . . . . . . . . . . Z-29

Appellant J&C page 5 . . . . . . . . . . . . . Z-30

Appellant DE 323 Exhibit C . . . . . . . . . . Z-31

Letter of Appellant A-92 . . . . . . . . . . . Z-32

Letter of Appellant A-93 . . . . . . . . . . . Z-33

Letter of Appellant A-94 . . . . . . . . . . . Z-34

Appellant DE 323 Exhibit m . . . . . . . . . . Z-35

SRP progress report A-95 . . . . . . . . . . . Z-36

SRP progress report A-96 . . . . . . . . . . . Z-37

SRP progress report A-97 . . . . . . . . . . . Z-38

SRP progress report A-98 . . . . . . . . . . . Z-39

SRP progress report A-99 . . . . . . . . . . . Z-40

Appellate Custody classification Form . . . . . Z-41

Letter of mary and George Liounis . . . . . . . Z-42

Appellant DE 323 Exhibit D . . . . . . . . . . Z-43

Appellant DE 323 Exhibit E . . . . . . . . . . Z-44

Appellant DE 323 Exhibit F . . . . . . . . . . Z-45

Appellant DE 323 Exhibit G . . . . . . . . . . Z-46

Appellant DE 323 Exhibit L . . . . . . . . . . Z-47

Pro-SE Appellant Brief Exhibit 10 . . . . . . . Z-48

Page 2 of 2



**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

| | | |
|---|---|---|
| Inmate Name: LIOUNIS, PETER | | Reg #: 48332-054 |
| Date of Birth: | Sex: M   Race: WHITE | Facility: GIL |
| Encounter Date: 08/18/2021 09:21 | Provider: Anderson, Eddie (MAT) | Unit: B01 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT  1        Provider:  Anderson, Eddie (MAT) DO

Chief Complaint:   Chronic Care Clinic

Subjective:   Modified operations due to Covid-19;
Patient allergies reviewed and updates applied during this visit if indicated. See Chart for most recent patient allergy list.
PULM - SABA twice daily or less, gives me a long history of distantly being evaluated as a 9/11 victim and had some imaging that he understood to be lymphoma, was to have a biopsy possibly but got lost in follow up, says record was from 2003 and that possibly he had a "heart mass and something at T11", also says he distantly had a cardiac stress test and needed to have a follow up on same, last was 2007;
GOUT - "great" since starting on Rx, no complaint;
HTN - took Rx this AM, tolerates fine, meeting goals;
PVD - had improvement after surgery on RIGHT but not LEFT, says he saw vascular recently who wanted to do further testing, unsure other than they mentioned possibly some other obstruction causing the swelling;
Patient understood and agreed with diagnosis, treatment plan, compliance, and risks.

Pain:   Not Applicable

Seen for clinic(s): Endocrine/Lipid, Hypertension, Pulmonary/Respiratory

**ROS:**

**General**
**Constitutional Symptoms**
No: Easily Tired, Unexplained Weight Loss, Weight Gain
**Cardiovascular**
**General**
Yes: Edema, Hx Hypertension, Hx of Heart Disease
No: Angina, Exertional dyspnea
**Pulmonary**
**Respiratory System**
Yes: Hx Asthma, Hx Bronchitis
No: Cough - Dry, DOE, Hemoptysis, Night Sweats, Shortness of breath
**Endocrine**
**General**
No: Hx of Diabetes, Hx of Thyroid Dx
**Lymphatics**
**General**
Yes: Lymphedema, Pedal Edema

**OBJECTIVE:**
**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/18/2021 | 09:21 GIL | 65 | | | Anderson, Eddie (MAT) DO |

| | | | | |
|---|---|---|---|---|
| Inmate Name: LIOUNIS, PETER | | | Reg #: | 48332-054 |
| Date of Birth: | Sex: | M   Race: WHITE | Facility: | GIL |
| Encounter Date: 02/24/2021 13:20 | Provider: | Wilson, Alicia DMSc, | Unit: | B01 |

**Auscultation**

Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

**Musculoskeletal**

**Gait**

Yes: Normal Gait

**Exam Comments**

Labs Nov:
CMP WNL

Legs look great after varicose surgery.

**ASSESSMENT:**

Allergic rhinitis, cause unspecified, 477.9 - Current

Extrinsic asthma, unspecified, 493.00 - Current

Gout, unspecified, 274.9 - Current

Hypertension, Unspecified essential, 401.9 - Current

Morbid obesity, 278.01 - Current

Sleep apnea, unspecified, 780.57 - Current

Varicose veins of lower extremities with complications, I83899 - Resolved

**PLAN:**

**Medication Reconciliation.**
**The patient's known medication list including OTC items was compiled and compared to new and changed BOP orders.**

**Other Active Medications**

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|
| 212290-GIL | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 08/20/2021 | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) "Empty container is to be returned for refill" |
| 212291-GIL | Allopurinol 300 MG Tab | 08/20/2021 | Take one tablet (300 MG) by mouth twice daily |
| 212292-GIL | Aspirin 81 MG EC Tab | 08/20/2021 | Take one tablet by mouth each day |
| 212295-GIL | Lisinopril 10 MG Tab | 08/20/2021 | Take one tablet (10 MG) by mouth each day |
| 212898-GIL | Mometasone Furoate Inhal 220 MCG/Inh [ 60 doses] | 09/08/2021 | Inhale one puff by mouth twice daily **rinse mouth after use** "Empty container is to be returned for refill" |

**Other Active IVs:**

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|
| No IVs to be Reconciled. | | | |

**Other Active OTCs:**

| Medication | OTC Source | Start Date | Stop Date |
|---|---|---|---|
| Dibucaine External Ointment 1% 28.35gm | Commissary-Recommended | 05/27/2015 | |

**Order Details:**

| Inmate Name: | LIOUNIS, PETER | | | Reg #: | 48332-054 |
| Date of Birth: | | Sex: | M   Race:   WHITE | Facility: | GIL |
| Encounter Date: | 08/18/2021 09:21 | Provider: | Anderson, Eddie (MAT) | Unit: | B01 |

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | | Translator | Language |
|---|---|---|---|---|---|---|
| Radiology | 10/11/2021 | 10/11/2021 | Routine | | No | |

Subtype:

CT scan, Offsite

Reason for Request:

CT CAP w/contrast

Provisional Diagnosis:

49 y/o male with distant history of possibly environmental exposure for chronic inflammatory lung disease, asthma, CT scan distantly noted mediastinal lymphadenopathy, was to have mediastinoscopy but did not; Significant PVD history, had vascular surgery with improvement of RIGHT leg, recent vascular follow up likely recommending further vascular study for obstruction of LEFT; [pending vascular consult report]

| Cardiology | 10/18/2021 | 10/18/2021 | Routine | No |
|---|---|---|---|---|

Subtype:

Offsite Appt

Reason for Request:

Stress test

Provisional Diagnosis:

49 y/o male with history significant vascular disease (PVD s/p surgery) and hypertension; per history had prior abnormal stress testing with no follow up other than to repeat;

Supplies Issued:

| Supply | Quantity | Date Issued |
|---|---|---|
| Bandaids | 15 | 08/18/2021 |

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Pneumovax 23 Immunization | 08/20/2021 00:00 | Nurse 01 |
| Referral | 08/21/2021 00:00 | Nurse 01 |

Peak flows
EKG

| Chronic Care Visit | 02/01/2022 00:00 | MLP 01 |
|---|---|---|

HTN, PVD, PULM, Gout;
p 8/18/2021

| Referral | 03/01/2022 00:00 | Nurse 01 |
|---|---|---|

FIT

| Chronic Care Visit | 07/18/2022 00:00 | Physician 02 |
|---|---|---|

HTN, PVD, PULM, Gout;
p 8/18/2021

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed
Return Immediately if Condition Worsens

**Other:**

Chart reconciled;
Pending - optometry, suture removal (recent finger laceration);

At least what I could gather from his records and history I wouldn't commit him to a mediastinoscopy at this point;



**Bureau of Prisons**
**Health Services**
**Clinical Encounter - Administrative Note**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | LIOUNIS, PETER | | | Reg #: | 48332-054 |
| Date of Birth: | | Sex: | M    Race: WHITE | Facility: | GIL |
| Note Date: | 03/24/2021 13:10 | Provider: | Houchin, Jessica EMTP | Unit: | B01 |

Admin Note - Medication Reconciliation encounter performed at Health Services.
**Administrative Notes:**

　　ADMINISTRATIVE NOTE　　**1**　　　　Provider:　Houchin, Jessica EMTP
　　　Inmate is requesting a renewal of Indomethacin for a Gout flare. Hx of same.

**New Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| | Indomethacin Capsule | 03/24/2021 13:10 |
| | **Prescriber Order:**　　25 mg Orally  -  three times a day x 10 day(s) | |

**Copay Required:** No　　　　　**Cosign Required:** Yes
**Telephone/Verbal Order:** Yes　　**By:**　Wilson, Alicia DMSc, MSPA-C
**Telephone or Verbal order read back and verified.**


Completed by Houchin, Jessica EMTP on 03/24/2021 13:13
Requested to be cosigned by  Wilson, Alicia DMSc, MSPA-C.
Cosign documentation will be displayed on the following page.



## Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | LIOUNIS, PETER | | Reg #: | 48332-054 |
| Date of Birth: | | Sex:  M   Race: WHITE | Facility: | GIL |
| Note Date: | 04/14/2021 10:31 | Provider:  Wilson, Alicia DMSc, | Unit: | B01 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:   Wilson, Alicia DMSc, MSPA-C

Modified operations due to COVID.
CC med renewal. CC up to date.

**Medication Reconciliation.**
**The patient's known medication list including OTC items was compiled and compared to new and changed BOP orders.**
**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 212297-GIL | Potassium Chloride 10 mEq ER Tab [KlorCon M] | 04/14/2021 10:31 |

    **Prescriber Order:**    Take one tablet (10 MEQ) by mouth each day x 180 day(s)

    Indication:   Hypertension, Unspecified essential

| Rx# | Medication | Order Date |
|---|---|---|
| 212293-GIL | Fluticasone Prop 50mcg, 16ml Nasal spry | 04/14/2021 10:31 |

    **Prescriber Order:**    Spray one puff in each nostril twice daily  *Bottle must be returned to the pharmacy and exchanged to receive new fill* x 180 day(s)

    Indication:   Chronic sinusitis, maxillary, Allergic rhinitis, cause unspecified, Extrinsic asthma, unspecified, Sleep apnea, unspecified

**Other Active Medications**

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|
| 212290-GIL | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 08/20/2021 | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) "Empty container is to be returned for refill" |
| 212291-GIL | Allopurinol 300 MG Tab | 08/20/2021 | Take one tablet (300 MG) by mouth twice daily |
| 212292-GIL | Aspirin 81 MG EC Tab | 08/20/2021 | Take one tablet by mouth each day |
| 212295-GIL | Lisinopril 10 MG Tab | 08/20/2021 | Take one tablet (10 MG) by mouth each day |
| 212898-GIL | Mometasone Furoate Inhal 220 MCG/Inh [ 60 doses] | 09/08/2021 | Inhale one puff by mouth twice daily **rinse mouth after use** "Empty container is to be returned for refill" |

**Other Active IVs:**

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|

No IVs to be Reconciled.

**Other Active OTCs:**

| Medication | OTC Source | Start Date | Stop Date |
|---|---|---|---|
| Dibucaine External Ointment 1% 28.35gm | Commissary-Recommended | 05/27/2015 | |

    **Order Details:**

Z-6

| MEDICAL RECORD | CONSULTATION | |
|---|---|---|
| TO: Dr. Zerbos | FROM: (Requesting physician or activity) | DATE OF REQUEST 8/19/03 |

REASON FOR REQUEST: _Pltn May Vasoovax of (R) leg_

Prior Treatment:

Current Medications:

Allergies: _NKDA_

Significant PMH:

Significant Objective findings:

_Mediastinal Adenopathy_

PROVISIONAL DIAGNOSIS: _r/o Lymphoma_

DOCTOR'S SIGNATURE _____ APPROVED ___ To be seen no later than: _Today 8/19/03_
_at 5pm_

BRADLEY _____, M.D.
STAFF PHYSICIAN
MCC, NEW YORK

CONSULTATION REPORT

Consultant findings:

_CT-SCAN Pretracheal_
_Mediastinal Adenopathy_

Assessment:

Plan: _Admit 8/26/03 at 6AM_
_Will need CBC, SMA7, PT/PTT, T+S_
_EKG_

Medical Category: Please check one of the categories below whenever there is a recommendation for diagnostic studies or treatment which will result in transportation of the inmate outside of the institution:

( ) Medically Mandatory: immediate, urgent or emergency care required to maintain or treat a life threatening illness or injury.
(✓) Presently Medically Necessary: treatment that cannot be reasonably delayed without causing further complication, serious deterioration, significant pain or discomfort.
( ) Medically Acceptable But Not Medically Necessary: for the convenience of the inmate.

Follow Up:
( ) No Additional Follow Up By Consultant Required At This Time. Patient To Be Followed Up By Institution Staff PRN.
( ) Schedule Patient For Next Appointment No Later Than _____.

Patient Education:
( ) Etiology   ( ) Treatment Alternatives & Prognosis   _Scheduled for Surgery_

| SIGNATURE AND TITLE | | DATE 8/19/03 |
|---|---|---|
| Kevin Kim (Billing) | | |

Metropolitan Correctional Center
150 Park Row
New York, New York 10007
Telephone (646) 836-6300, ext.6446
Fax (646) 836-7680

| REGISTER NO. 48332-054 | WARD NO. |
|---|---|

CONSULTATION SHEET
Medical Record
STANDARD FORM 513 (REV. 8-92)

A-083

Z - 7

# *Chinatown Medical Imaging Center*

PATIENT NAME:          LIOUNIS, PETER

DATE OF BIRTH:          M

UNIT #          48332-054

DATE OF EXAM:          06/10/03

REQUESTED BY:          DR. MARK GLOVER

RADIOLOGIST:          EDDY TONG, M.D.

STUDY PERFORMED:          RADIOGRAPHS OF THE CHEST

PA and lateral views of the chest show no evidence of infiltration, consolidation, or atelectasis. The PA projection is underexposed. The lateral view is suboptimal because the patient did not hold his breath. There is abnormal configuration of the left hilar region, which presents a bulging contour of the left cardiac border, as shown in the PA projection. This abnormality is not visualized in the lateral view. A CT would be helpful for better evaluation. There is slight compression of the body of T11.

IMPRESSION:

1. No active disease of the chest.
2. Abnormal configuration of the left hilar region. A CT of the chest is suggested to rule out possible aneurysm of the ascending aorta or hilar lymphadenopathy.
3. Slight compression of the body of T11.

*Flu c̄ chest c̄ to consider CT of chest evaluation c̄*

*[signature] 6/18/03*

Eddy Tong, M.D.
Board Certified Radiologist

*5 Chatham Square, New York, NY 10038 ◦ Tel: (212) 566-6288 ◦ Fax: (212) 566-4882*

A-089

JUL-09-2002  11:55      NYUDH - RADIOLOGY                1 212 312 5968    P.01/02

NEW YORK UNIVERSITY MEDICAL CENTER
NY DOWNTOWN HOSPITAL DEPT OF RADIOLOGY

LIOUNIS, PETER
D07226390        Age: 31 Years    Sex: M
GLOVER, MARK, MD
Preliminary DX: CT THORAX/ANEURYSM

Exam: (DH)CTTHRW    CT THORAX W/ CON
Exam Completion:8-Jul-2003/ 1:48 PM       Acc: 2011589

Chest CT

Clinical indication: Abnormal chest x-ray rule out adenopathy-rule
out aneurysm

CT images were obtained using multidetector spiral imaging with
3-D rendering and multi planar formatted images following
intravenous administration.

No prior studies are available for comparison.

The heart and pulmonary vasculature are within normal limits. No
evidence of pulmonary embolus identified.  Visualized thoracic and
upper abdominal aorta appears normal without evidence of aneurysm
or dissection.

Mild to moderate lymphadenopathy is noted in the AP window,
subcarinal, precarinal regions of the mediastinum, as well as in
the bilateral axillary regions.  Etiology of these is not
determined from the study.  Clinical correlation recommended. No
significant hilar lymphadenopathy is identified.

The main, lobar, and segmental bronchi are visualized and patent.

There is no other parenchymal consolidation or mass.

Several regions of mild focal pleural thickening is noted in the
posterior aspect of the left hemithorax of questionable etiology
significance. No other pleural or pericardial effusion is seen.

Impression:

1. Mediastinal and bilateral axillary lymphadenopathy as
described above.  Correlation recommended.  No evidence of
parenchymal lung abnormalities seen.

2. No evidence of aortic aneurysm or dissection.

JUL 09 '03 12:28                          1 212 312 5968      PAGE.01

A-085

Z-9

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

| | | | |
|---|---|---|---|
| Inmate Name: LIOUNIS, PETER | | Reg #: 48332-054 | |
| Date of Birth: | Sex: M   Race: WHITE | Facility: GIL | |
| Encounter Date: 02/24/2021 13:20 | Provider: Wilson, Alicia DMSc, | Unit: B01 | |

Chronic Care - Advanced Practice Provider Follow Up encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1          Provider:  Wilson, Alicia DMSc, MSPA-C

Chief Complaint:  GENERAL

Subjective:  PULM - asthma and sleep apnea. Mixed up inhalers for a while but now is using Asmanex twice daily and Albuterol as need, "maybe 3 times a day".
ORTHO - gout, allopurinol and naproxyn. No recent flares since he started the Allopurinol.
HTN - lisinopril, potassium. States that he was on HCTZ but it was stopped due to gout.
CV - hx varicose veins with bilateral LE phlebectomy. Asking for replacement stockings.
LIPID - no active diagnosis, can be removed from CCC.

Pain:  Not Applicable

**Seen for clinic(s):** Endocrine/Lipid, Hypertension, Pulmonary/Respiratory

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 02/24/2021 | 13:59 GIL | 87 | | | Wilson, Alicia DMSc, MSPA-C |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 02/24/2021 | 13:59 GIL | 124/70 | Left Arm | Sitting | Adult-regular | Wilson, Alicia DMSc, MSPA-C |

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 02/24/2021 | 13:59 GIL | 70.0 | 177.8 | Wilson, Alicia DMSc, MSPA-C |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 02/24/2021 | 13:59 GIL | 299.0 | 135.6 | | Wilson, Alicia DMSc, MSPA-C |

**Exam:**

**Diagnostics**
**Laboratory**
Yes: Results
**General**
**Affect**
Yes: Pleasant, Cooperative
**Appearance**
Yes: Appears Well, Alert and Oriented x 3
No: Appears Distressed
**Pulmonary**
**Auscultation**
Yes: Clear to Auscultation
**Cardiovascular**

A-028

September 15, 1996
Att. dent IV-E, Page 1

Z - 10

# FEDERAL BUREAU OF PRISONS
## DENTAL/MEDICAL HEALTH HISTORY FORM

1. Are you currently taking any medication?           yes (no)
   If so, what?_____

2. Are you allergic to or have you had a reaction
   to any medication or drug? If so, what?            yes (no)
   _____

3. Have you been under the care of a physician during
   the past two years? If so, why? _____        yes (no)

4. Have you been hospitalized in the past two years?
   If so, why? _____              yes (no)

5. Do you have or have you ever had a heart murmur
   or been treated for a heart condition?             yes (no)

6. Do your ankles ever swell during the day?          yes (no)

7. Have you ever been treated for a tumor or growth?  yes (no)

8. Have you ever had abnormal bleeding?               yes (no)

9. Have you ever had serious difficulty with any
   dental treatment?                                  yes (no)

10. Have you ever had clicking, popping, or pain
    in your jaw joint?                              (yes) no

Circle any of the following that you have had:

| | |
|---|---|
| Congenital heart defects | Heart murmur |
| Heart attack or heart problems | Angina |
| Stroke | High Blood pressure |
| Rheumatic Fever | Heart pacemaker |
| Asthma | Epilepsy or seizures |
| Anemia (blood problems) | Diabetes |
| Thyroid problems | AIDS or HIV infection |
| Chronic bronchitis | Emphysema |
| Venereal disease (syphilis, gonorrhea) | Tuberculosis (TB) |
| Arthritis | Psychiatric treatment |
| Artificial heart valve | Artificial joint |
| Hepatitis | |

Reviewed

Do you currently use tobacco (cigarettes) chewing tobacco,
snuff)?                                          (yes) no

Do you have any disease, condition, or problem not listed?
WOMEN ONLY: Are you pregnant?

Name: Peter Liounis          Reg No. 48332-054

Institution: FCI McKean      Date: 10-15-01

Case 22-716, Document 22, 05/20/2022, 3319175, Page14 of 91

Next Register Number:

| Submit Reg Number |

Z-11

| View All Comments |

## 48332-054  LIOUNIS, PETER

Exhibit
A

10/16/2001  INTAKE SCREENING  MCK  JANISE A. HINSON, PH.D.

Inmate is a 29 y/o single caucasian male with a 87  months sentence for
conspiracy to commit securities and wire fraud, money laundering, and
interstate travel in aid of racketeering.  The inmate has no prior offenses .
  The inmate reported a history of depression (due to breakup w/fiancee,
court case/upcoming incarceration, and substance abuse) for approximately 2
years; saw a psychologist once and a psychiatrist twice in 2000 (no history
of taking psychotropic medication). The inmate denies signs and symptoms of a
current severe mental illness, other than sleep difficulties (DFA, restless
sleep) which have persisted for 10 years. He reported that the depressed mood
and loss of appetite upon arrival have since disappeared; he presented today
with appropriate affect, euthymic mood, good appetite. He agreed to contact
psychology services should depressive symptoms recur. He does not meet MDS
criteria at this time.  The inmate denies homicidal and/or suicidal ideation;
he acknowledged a history of occasional passive suicidal ideation, but no
intent or plan in the past and none currently. The inmate denies a family
history of suicide. The inmate acknowledges a history of substance use,
including alcohol dependence, cocaine dependence, cannabis abuse, ecstasy
abuse.  The inmate was given information about the relationship between
criminal activity and substance abuse as well as the high potential for
reincarceration, morbidity and mortality associated with substance abuse.
The inmate was provided information about the basic drug education program,
transfer options for the residential drug treatment program (depending upon
the amount of time remaining on the sentence when the inmate applies for drug
treatment), and non-residential drug treatment options, including NA and AA.
The inmate was provided with information about the application procedures and
the application for the drug treatment program.  The inmate denies any need
for psychological services other than the drug treatment program.

Dx: Axis I:  Alcohol Dependence, in remission due to incarceration
                          Cocaine Dependence, in remission due to incarceration
                          Cannabis Abuse
                          Ecstasy Abuse
                          Hx of Major Depressive Disorder, single episode
              Adult Antisocial Behavior

      Axis II: No Diagnosis

10/3/2001  EVAL/RPT REVIEW PSY ON ARRIVAL  MCK  JANISE A. HINSON, PH.D.

Inmate Liounis was interviewed in R&D upon arrival to the institution. He
presented with restricted affect and moderately depressed mood, and reported
problems with DFA, restless sleep, lack of appetite (loss of 20 pounds in
1-1/2 months), ruminative thoughts, feelings of hopelessness, and difficulty
concentrating. He denied current suicidal and/or homicidal ideation,
hallucinations, or delusions. He reported a history of "continuous
depression" for the past 2 years as a result of breakup w/fiance, legal
case/incarceration, and substance abuse issues. He reported seeing a
psychologist once and a psychiatrist twice for depression in 2000, but has
never taken psychotropic medication. He reported that he is not interested in

psychology services, but agreed to contact psychology staff should depressive symptoms persist or worsen. He will be seen in psychology for full intake screening.

Z-11

Exhib

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA

       - against -

PETER LIOUNIS,

              Defendant.

------------------------------------------------------------x

MEMORANDUM AND ORDER
12-CR-0350 (ILG)

**GLASSER**, Senior United States District Judge:

      Pending before the Court is defendant Peter Liounis' motion for compassionate release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), [ECF No. 315], and motion to expedite [ECF No. 323].

In the last of countless orders this Court has already authored on Liounis' many attempts to escape

responsibility for his criminal activities, the Court described Liounis' filings as

> a relentless tsunami of hundreds of pages of meritless motions seeking relief from
> claims which have been resolved against him by a jury, by this Court, by the Court
> of Appeals, and thought unworthy of further consideration by the Supreme Court
> in its denial of his petition for a writ of certiorari.

*United States v. Liounis*, No. 12-CR-350, 2018 WL 9662488, at *2 (E.D.N.Y. July 16, 2018). In

order to stop this "serial offender [from] smother[ing] the Clerk's Office of this Court, the judge's

chambers and the Office of the United States Attorney, with many hundreds of pages of repetitious

faux legal arguments," the Court permanently enjoined Liounis "from filing any future motion,

petition, or other document in this Court or any other federal court touching upon his 2014

conviction, without prior authorization of the Court." *Id.* at *2-3.

      Liounis now seeks, on the basis of the COVID-19 pandemic, to be released from his prison

term after having served less than half of it. His various filings in support of this latest motion

span 200 pages of single-spaced, handwritten argument, medical records, and other assorted

documentation. [ECF Nos. 315, 321-23]. The Government, which submits nearly 300 pages in

argument and medical records, opposes his motion for release. [ECF No. 320]. For the following

reasons, Liounis' motion for release is **DENIED** and his motion to expedite is **DENIED AS**

**MOOT**.

### BACKGROUND

On May 17, 2012, Liounis was indicted on 18 counts of money laundering, securities fraud,

mail fraud, wire fraud, and conspiracy, arising from his participation in a series of complex

fraudulent investment schemes through which he and his co-conspirators duped hundreds of

investors out of millions of dollars. Indictment [ECF No. 14]. A full recitation of the schemes'

operations, which involved companies located in at least four countries and involved the use of

overseas shell companies, fraudulently procured bank accounts, and fictitious identities, is

unnecessary for the purposes of this motion. Pre-Sentence Report, dated Apr. 17, 2014 [ECF No.

215] ("PSR"), at ¶ 13. In sum, Liounis acted as a salesman who induced victims to invest in

fraudulent investment schemes established by other co-conspirators. Through unsolicited

telephone calls, emails, fraudulent sales brochures sent through the mail, and the use of lies and

deceit in three separate schemes, he induced at least 265 victims to invest in these fraudulent

schemes, causing a total of $15,350,403 in loss. *Id.* at ¶ 30. Liounis began his participation in

these schemes only months after being released from nearly seven years in prison for a very similar

offense. *Id.* at 68.

On February 5, 2014, following a seven-day trial, a jury found Liounis guilty on all nine

counts of a revised Indictment. [ECF No. 205]; PSR at ¶ 1. Liounis testified at trial, repeatedly

denying any and all involvement in every aspect of the charged conduct and attempting to

implicate another innocent individual. PSR at ¶ 34. His total offense level was 37 and his criminal

history category was IV, leading to a Sentencing Guidelines range of 292-365 months

imprisonment. PSR at ¶¶ 66, 73, 107. On August 22, 2014, the Court sentenced Liounis to 292

Z - 12

months of imprisonment, followed by three years of supervised release. Judgement in a Criminal

Case [ECF No. 249]. Liounis is currently scheduled to be released from prison on January 10,

2033.

## DISCUSSION

**I.    Law**

18 U.S.C. § 3582(c)(1)(A)(i) provides that

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of
> the defendant after the defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that [] extraordinary and compelling
> reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). The referenced § 3553(a) factors include "the nature and

circumstances of the offense and the history and characteristics of the defendant," "the need for

the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense," and to provide specific and general deterrence.

18 U.S.C. § 3553(a). What constitutes an "extraordinary and compelling" reason is entirely within

the district court's discretion. *United States v. Giddens*, No. 20-3270, 2021 WL 5267993, at *2

(2d Cir. Nov. 12, 2021); *see also United States v. Kimbell*, No. 21-288, 2021 WL 5441249, at *1

(2d Cir. Nov. 22, 2021) ("The determination as to what constitutes extraordinary and compelling

reasons warranting a reduction is committed to the sound discretion of the district court."); *United*

*States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to

consider the full slate of extraordinary and compelling reasons that an imprisoned person might

bring before them in motions for compassionate release.").

3

7 - 12

Because relief under this statute is only appropriate when all three required conditions are in place, namely, administrative exhaustion, satisfaction of the § 3553(a) factors, and extraordinary and compelling reasons, "if a district court determines that one of those conditions is lacking, it need not address the remaining ones." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (holding that "when a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction").

## II.    Application

Liounis argues that his underlying medical conditions – hypertension, asthma, shortness of breath, morbid obesity, sleep apnea, vascular disease, chronic gout, allergic rhinitis, chronic sinusitis, lymphoma, abnormal configuration of the left hilar region, and a slight compression of the body of T11 vertebra – places him at high risk from COVID-19. [ECF No. 315], at 2. The Court has previously held that the threat of exposure to the coronavirus does not, without more, provide an extraordinary and compelling reason to warrant granting a petition for compassionate release. *United States v. Locascio*, No. 90-cr-1051, 2020 WL 12719849, at *4 (E.D.N.Y. July 17, 2020) (collecting cases). A claim of entitlement to relief that is bottomed upon the existence of a risk that is applicable to the community at large is unpersuasive. In other words, to paraphrase Chief Judge Cardozo, risk in the air, so to speak, will not do. *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 99 (N.Y. 1928). More is required: a credible, real probability, not a mere undefined possibility.

There are three reasons why Liounis has not shown that the threat to him from the COVID-19 virus constitutes an extraordinary and compelling reason for purposes of the First Step Act.

4

First, Liounis' records show that he has been fully vaccinated against COVID-19, significantly reducing the likelihood that he will contract the virus. [ECF No. 320-1], at 67. This fact alone undermines his contention that he is at a high risk from the virus. Second, Liounis has not provided any evidence showing that the facility at which he is currently incarcerated, or the Bureau of Prisons more generally, is unable to treat his medical conditions or protect him from the risks he is facing from COVID-19. He offers no evidence, other than *ipse dixit*, to warrant a finding that the Bureau of Prisons is violating its statutory duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," 18 U.S.C. § 4042, given the existing circumstance of a pandemic. In fact, Liounis and the Government submit hundreds of pages of medical records showing that he is receiving medical care and is not experiencing any problems from his underlying medical conditions. The Court also notes that although Liounis asserts he suffers from lymphoma, his medical records do not support that diagnosis. Third, although the Court is not required to consider the specific conditions of confinement at the facility where Liounis is incarcerated, *see Keitt*, 21 F.4th at 72 n.3, it notes that the Bureau of Prisons currently indicates that there are no active cases at the facility where Liounis is incarcerated, indicating that his risk of exposure to the virus is actually low. Bureau of Prisons, COVID-19 Update, https://www.bop.gov/coronavirus/ (last visited March 14, 2022).

Having proffered no compelling and extraordinary circumstances that would justify a reduction in sentence, the Court may not modify the sentence once imposed. 18 U.S.C. § 3582(c); *Keitt*, 21 F.4th at 73. A reference to, and brief discussion of, the § 3553(a) factors is therefore superfluous. However, for the benefit of the record, the Court notes that the § 3553(a) factors were considered when the sentence was imposed and that they have not been affected by time. The

Z - 12

Court recalls its analysis at the time of Liounis' sentencing, including that he had previously been sentenced to over seven years of incarceration for similar conduct, such a sentence not proving sufficient to deter him from reoffending. In fact, at the time he began his involvement with the crimes for which he is now in prison it had only been a few months since he had been released from an 87-month sentence for conspiracy to commit securities and wire fraud and money laundering. PSR at ¶ 68. The Court also recalls the emotional testimony provided at trial by victims of Liounis' schemes. One victim was a policeman from Kentucky who needed money to take care of his father in a nursing home; Liounis misrepresented the amount of money left in the man's account and, instead of even sending the small amount Liounis claimed was left, Liounis sent his father a fruit basket. Others had invested significant sums of money intended for retirement, their children's education, and to care for sick loved ones. The recorded telephone calls that were played at trial showed Liounis to be callous and completely indifferent, guided solely by a desire to extract more money from his innocent victims. *United States v. Liounis*, No. 14-3216, Dkt. No. 39 (2d Cir. March 24, 2015), at A-538-A-539 (Aug. 22, 2014 Hr'g Tr. at 51:10-52:12). His claims of rehabilitation also ring hollow given his continued denial of responsibility. *See* [ECF No. 315], at 13. Of his 24-year sentence – the length of which indicates the serious of his crime – Liounis has served less than one-half. The need for the sentence imposed, which was just when it was rendered, and continued incarceration have not become "inequitable"[1] during the course of his incarceration.

---

[1] The legislative history of the amendment to § 3582(c) reflects the view that relief is appropriate where continued incarceration under the circumstances would be "inequitable." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).

2-12

## CONCLUSION

For the foregoing reasons, Liounis' motion for release is **DENIED**. His motion to expedite

is **DENIED AS MOOT**.


SO ORDERED.

Dated:        Brooklyn, New York
              March 14, 2022

                                        /s/
                                        I. Leo Glasser
                                        Senior United States District Judge

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

*2 - 13*

| | | |
|---|---|---|
| Inmate Name: LIOUNIS, PETER | | Reg #: 48332-054 |
| Date of Birth: 03/08/1972 | Sex: M Race: WHITE | Facility: GIL |
| Encounter Date: 02/09/2022 18:12 | Provider: Valdivieso, Jazmine RN | Unit: B01 |

Nursing - Medical Trip Return encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT **1**     Provider: Valdivieso, Jazmine RN

Chief Complaint: Medical Trip Return
Subjective: Inmate return from offsite appt and ER.
**Pain:**     Not Applicable

**OBJECTIVE:**

**Exam:**

General

Appearance

Yes: Appears Well, Alert and Oriented x 3

**Exam Comments**

Inmate returns from offsite appt. Per officer inmate had "asthma attack" before leaving for appt. so inmate was taken to ER, prescription written. Paperwork given by officer. offsite appt for cardiopulmonary. F/u with Dr. Sabbagh.

**ASSESSMENT:**

No Significant Findings/No Apparent Distress

**PLAN:**

**Medication Reconciliation.**
**The patient's known medication list including OTC items was compiled and compared to new and changed BOP orders.**

**New Medication Orders:**

| Rx# | Medication | | | | Order Date |
|---|---|---|---|---|---|
| | MethylPREDNISolone Tab 4 MG ( Dose Pack 21 tab) | | | | 02/09/2022 18:12 |
| | **Prescriber Order:**     as directed  Orally  -   daily x 6 day(s) | | | | |

**Reconciled Medications:**

| Source | Action | Type | Rx# | Medication | Order Detail |
|---|---|---|---|---|---|
| BOP | Continue | Rx | 231844-GIL | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) "Empty container is to be returned for refill" |
| BOP | Continue | Rx | 231845-GIL | Allopurinol 300 MG Tab | Take one tablet (300 MG) by mouth twice daily |
| BOP | Continue | Rx | 231846-GIL | Aspirin 81 MG EC Tab | Take one tablet by mouth each day |

7-14

# Stonewall Jackson Memorial Hospital Emergency Department
### 230 Hospital Plz, Weston, WV 26452
### (304) 269-8000
### Discharge Instructions (Patient)

**Name:** PRISONER LIOUNIS, PETER          **Current Date:** 2/9/2022 13:10:51
**DOB:** 3/8/1972          **MRN:** 308690          **FIN:** 1257329
**Diagnosis:** Asthma exacerbation

**Visit Date:** 2/9/2022 12:21:05

**Primary Care Provider:**
  **Name:** Anderson, Eddie DO
  **Phone:** (304) 626-2500

**Emergency Department Providers:**
Primary Provider:
Hall, Tyler

Stonewall Jackson Memorial Hospital Emergency Department would like to thank you for allowing us to assist with your healthcare needs. The following instructions include patient education materials and information regarding your injury/illness.

**Comment:**

PRISONER LIOUNIS, PETER has been given the following list of follow-up instructions, prescriptions, and patient education materials:
**Follow-up Instructions:**

| **With:** | **Address:** | **When:** |
|---|---|---|
| Eddie Anderson | Fci Gilmer Glenville, WV 26351 (304) 626-2500 Business (1) | |

**Comments:**
Return to ED if symptoms worsen

48332-054

FCI GILMER
201 FCI Lane
P.O. Box 5000
Glenville, WV 26351

**Patient Education Materials:**

Person Full Name PRISONER LIOUNIS, PETER  Date of Birth 3/8/1972
MRN (Person Alias) 308690          FIN NBR (Encounter Alias) 1257329
02/9/2022 13:10:52          1 of 9



# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | LIOUNIS, PETER | | | Reg #: | 48332-054 |
| Date of Birth: | 03/08/1972 | Sex: | M    Race: WHITE | Facility: | GIL |
| Note Date: | 02/24/2022 13:30 | Provider: | McCoy, Emery (MAT) | Unit: | B01 |

Cosign Note - Clinical Encounter Cosign encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**        Provider:  McCoy, Emery (MAT) DO/CD

IM seen briefly with c/o pleuretic right sided chest discomfort and mild productive cough.  Denies F/C.  Denies injury/trauma.  Sent out on 2/9 for asthma attack with prednisone taper Rx.  Exam: Resp few rhonchi on Rt. CV-RRR, No S3/S4.  No M/R/G.

**Other:**

Give Solumedrol 125mf IM now and repeat Prednisone taper.  Rx Doxycline 100mg bid.  Check CXR.

**Disposition:**

Follow-up at Sick Call as Needed
Return Immediately if Condition Worsens
Return To Sick Call if Not Improved

**Copay Required:** No          **Cosign Required:**  No
**Telephone/Verbal Order:**  No

Completed by McCoy, Emery (MAT) DO/CD on 02/24/2022 13:36

Z-16

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

| | | |
|---|---|---|
| Inmate Name: LIOUNIS, PETER | | Reg #: 48332-054 |
| Date of Birth: 03/08/1972 | Sex: M Race: WHITE | Facility: GIL |
| Encounter Date: 03/03/2022 10:31 | Provider: McCoy, Emery (MAT) | Unit: B01 |

Physician - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1        Provider: McCoy, Emery (MAT) DO/CD

Chief Complaint: Other Problem

Subjective:        Modified operations due to COVID-19.
IM seen at his request for multiple issues. First he reports having continued left lateral chest discomfort with coughing or deep inspiration. He also feels that his breathing is not as good as it normally is. He completed 2 courses of tapering prednisone and had an ABX with the last course. Felt better while on the prednisone but after stopping it felt worse. Non-productive cough. No F/C. No radiation to neck, extremities or jaw line. Pain non exertional in nature. Reports began around 2/9 and then 10 days ago seem to be worse. Improved while on steroids. 2nd is concerned because when seen in ER on 2/9 he reports the ER physician told him he needed a thyroid US. 3rd he was wanting to know when he is going to have the open CT scan of the chest for evaluation of a prior CT of the chest from 2003 showing medialstinal lymphadenopthy.

**Pain:**        Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 03/03/2022 10:40 |
| Location: | Chest-Left |
| Quality of Pain: | Pleuritic |
| Pain Scale: | 3 |
| Intervention: | prednisone |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 3-4 Weeks |
| Duration: | <30 Minutes |
| Exacerbating Factors: | cough or deep breathing |
| Relieving Factors: | avoid coughing or deep breathing |
| Reason Not Done: | |
| Comments: | |

**ROS:**

**General**

**Constitutional Symptoms**

No: Chills, Fatigue, Fever

**HEENT**

**Head**

Yes: Within Normal Limits

**Neck**

Yes: Enlargement of Lymph Nodes, Pain

**Cardiovascular**

Z - 17

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | LIOUNIS, PETER | | Reg #: | 48332-054 |
| Date of Birth: | 03/08/1972 | Sex: M    Race: WHITE | Facility: | GIL |
| Note Date: | 04/11/2022 14:01 | Provider: Okoro, Ayo FNP-C/PMH- | Unit: | B01 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**          Provider:  Okoro, Ayo FNP-C/PMH-BC
Prescription medication refill

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 222781-GIL | Indomethacin 50 MG Cap | 04/11/2022 14:01 |

**Prescriber Order:**    Take one capsule (50 MG) by mouth three times daily for 10 days x 180 day(s)

Indication:  Gout, unspecified

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Okoro, Ayo FNP-C/PMH-BC on 04/11/2022 14:02

| Inmate Name: | LIOUNIS, PETER | | | Reg #: | 48332-054 |
|---|---|---|---|---|---|
| Date of Birth: | 03/08/1972 | Sex: | M   Race:   WHITE | Facility: | GIL |
| Encounter Date: | 03/03/2022 10:31 | Provider: | McCoy, Emery (MAT) | Unit: | B01 |

**General**

Yes: Hx Hypertension

**Pulmonary**

**Respiratory System**

Yes: Cough - Dry, Hx Asthma, Hx of Sleep Apnea, Shortness of breath (Triggers?: Activity)

No: Wheezing

**GI**

**General**

Yes: Within Normal Limits

**Neurological**

**Autonomic System**

Yes: Within Normal Limits

**Cranial Nerves**

Yes: Within Normal Limits

**Motor System**

Yes: Within Normal Limits

**Sensory System**

Yes: Within Normal Limits

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 97.8 | 36.6 | Oral | McCoy, Emery (MAT) DO/CD |
| 02/24/2022 | 13:20 GIL | 97.1 | 36.2 | Axillary | Bremar, Jon EMTP |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 74 | Via Machine | | McCoy, Emery (MAT) DO/CD |
| 02/24/2022 | 13:20 GIL | 79 | Radial | Regular | Bremar, Jon EMTP |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 16 | McCoy, Emery (MAT) DO/CD |
| 02/24/2022 | 13:20 GIL | 18 | Bremar, Jon EMTP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 142/98 | Right Arm | Sitting | Adult-large | McCoy, Emery (MAT) DO/CD |
| 02/24/2022 | 13:20 GIL | 119/81 | Left Arm | Sitting | Adult-regular | Bremar, Jon EMTP |

**Wright Peak Flow:**

| Date | Time | Attempt 1 | Attempt 2 | Attempt 3 | Effort | Bronchodilator | Provider |
|---|---|---|---|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 400 | 470 | 450 | Fair | Without | McCoy, Emery (MAT) |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 03/03/2022 | 10:33 GIL | 99 | Room Air | McCoy, Emery (MAT) DO/CD |

**Bureau of Prisons**
**Health Services**
**Clinical Encounter**

*Z-19*

| | | |
|---|---|---|
| Inmate Name: LIOUNIS, PETER | | Reg #: 48332-054 |
| Date of Birth: 03/08/1972 | Sex: M Race: WHITE | Facility: GIL |
| Encounter Date: 03/28/2022 10:40 | Provider: Okoro, Ayo FNP-C/PMH- | Unit: B01 |

Mid Level Provider - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**         Provider: Okoro, Ayo FNP-C/PMH-BC

Chief Complaint: PULMONARY/RESPIRATORY

Subjective: Modified Operation due to COVID 19

Inmate seen in the housing unit due to Facility lock down for an inmate requested sick call.

HPI: Patient is a 50 year old African Caucasian male who requested to be seen for "not feeling well". Patient reports that symptoms started yesterday morning and got worse today. He reports "scratchy throat, headache, hot flashes, coughing, wheezing, runny nose, body aches, fatigue, pressure in head and brain fog." Patient took Aspirin once yesterday. He is alert and oriented x 4, he was sitting up in his lower bunk bed in his cell when I arrived. He walked with me to the sitting area in the middle of the unit. No shortness of breath observed. He speech is clear and unlabored and he was speaking in complete sentences. His lungs are clear throughout and saturation 99% on room air.

He is fully vaccinated and boostered. He mentioned that "many people are sick, but they don't want to say anything to medical because they don't want to be locked down".

He agreed to walk back with me to Health Service for COVID test, which we did without any S/S of distress. He tested negative to both COVID 19 test and Influenza test.

Pain:             No

**COMPLAINT 2**         Provider: Okoro, Ayo FNP-C/PMH-BC

Chief Complaint: HYPERTENSION

Subjective: Blood pressure elevated on both arms. He told me he had taken his medications two hours before my visit. Adjustment will be made to his blood pressure medications. Patient would like to go back on HCTZ because he previously used it. HCTZ was discontinued in the past due to GOUT flare ups. He is now on a maintenance dose of Alopurinol for gout. He understands that this will likely cause another flare up. He understands the risk and would like to be back on HCTZ. He felt that "it really worked for me". Will discontinue furosemide and add HCTZ. Will monitor for gout flares.

Pain:             No

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 03/28/2022 | 10:46 GIL | 97.8 | 36.6 | | Okoro, Ayo FNP-C/PMH-BC |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 03/28/2022 | 10:39 GIL | 62 | Via Machine | | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:12 GIL | 64 | Via Machine | | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:11 GIL | 68 | Via Machine | | Okoro, Ayo FNP-C/PMH-BC |

Inmate Name:  LIOUNIS, PETER
Date of Birth:  03/08/1972
Encounter Date: 03/28/2022 10:40

Sex:  M   Race:  WHITE
Provider:  Okoro, Ayo FNP-C/PMH-

Reg #:  48332-054
Facility:  GIL
Unit:  B01

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 03/28/2022 | 10:39 GIL | 16 | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:12 GIL | 16 | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:11 GIL | 16 | Okoro, Ayo FNP-C/PMH-BC |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 03/28/2022 | 10:12 GIL | 167/105 | Right Arm | Sitting | Adult-large | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:11 GIL | 167/114 | Left Arm | Sitting | Adult-large | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:39 GIL | 148/93 | Right Arm | Sitting | Adult-large | Okoro, Ayo FNP-C/PMH-BC |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 03/28/2022 | 10:39 GIL | 100 | Room Air | Okoro, Ayo FNP-C/PMH-BC |
| 03/28/2022 | 10:12 GIL | 99 | Room Air | Okoro, Ayo FNP-C/PMH-BC |

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 03/28/2022 | 10:39 GIL | 70.0 | 177.8 | Okoro, Ayo FNP-C/PMH-BC |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 03/28/2022 | 10:39 GIL | 329.0 | 149.2 | | Okoro, Ayo FNP-C/PMH-BC |

**Exam:**

**Ears**

  **Tympanic Membrane**

    Yes: Pearly

    No: Erythema, Serous Fluid, Bulging

  **Canal**

    Yes: Patent

    No: Erythema, Warm to Touch, Inflammation

  **External Ear**

    No: Erythema, Warm to Touch, Inflammation, Swelling

**Nose**

  **General**

    Yes: Nares Patent, Turbinates Normal

**Mouth**

  **Mucosa**

    No: Erythema

  **Pharynx**

    Yes: Erythema

    No: Ulceration, Tonsilar Hypertrophy, Sinus Drainage, White Plaques

**ASSESSMENT:**

| Inmate Name: | LIOUNIS, PETER | | | | | Reg #: | 48332-054 |
| Date of Birth: | 03/08/1972 | | Sex: | M | Race: WHITE | Facility: | GIL |
| Encounter Date: | 01/06/2022 08:40 | | Provider: | Okoro, Ayo FNP-C/PMH- | | Unit: | B01 |

| **Date** | **Time** | **Inches** | **Cm** | **Provider** |
|---|---|---|---|---|
| 01/06/2022 | 08:40 GIL | 70.0 | 177.8 | Okoro, Ayo FNP-C/PMH-BC |

*(9)*

**Weight:**

| **Date** | **Time** | **Lbs** | **Kg** | **Waist Circum.** | **Provider** |
|---|---|---|---|---|---|
| 01/06/2022 | 08:40 GIL | 331.0 | 150.1 | | Okoro, Ayo FNP-C/PMH-BC |

*Z-21*

**ROS Comments**

General: Negative for fever/chills, weight loss, SOB.
Skin: Negative for any itching or, rashes
HEENT: Negative for sore throat, any lesions, vision changes, runny or congested nose
Respiratory: History of asthma. Negative for SOB, DOE, wheezing or cough
Cardiac: History of HTN. Negative for chest pain, SOB.
Gastrointestinal: Negative for nausea, vomiting, and diarrhea, states appetite is good.
Urology: Patient denies any dysuria, urinary urgency, frequency, hesitancy or incontinence
Musculoskeletal: History of PVD and Gout. Negative for any joint pain or stiffness
Neurological: Negative for headache, dizziness, fainting, and paralysis.
Psych: Negative for depression, anxiety or suicidal ideation

**Exam Comments**

Constitutional: Morbidly obese. No acute distress
Skin: Warm, dry and intact
HEENT: PERRLA, Moist oral mucosa
Respiratory: CTA, respiration even and regular
Cardiac: Regular rate and rhythm, palpable pulses all extremities, Bilateral lower extremities edema.
Gastrointestinal: soft, non-tender, BS +
Genitourinary: deferred
Musculoskeletal: No stiffness. No weakness, no joint pain endorsed on this visit. Varicose vein present
Neurological: Stable gait, alert and oriented x 4
Psych: Calm and cooperative
Labs: Reviewed
Diagnostics: Reviewed

**Comments**

LAB TEST DATE   12/13/2021
NA: 138
K:   4.1
Bun/Creatinine: 14/0.98
Glucose: 90


Lab Test Date: 08/31/2021
AST: 17
ALT: 26
Chol: 176
Trig: 124
HDL: 57
LDL: 94
HbA1C: 4.9
Uric Acid: 9.0! (3.5-7.2)
Microalbumin: 8
FLU: 10/26/2020   Taken
Pneumovax: 09/20/2021 - Taken
COVID 19 VACCINE: 03/23/2021 - Taken
CXR:11/22/2021 - Negative
EKG: 09/20/2021 - NSR rate 64

Appellant

PSR Exhibits

APPENDIX

Z - 22

Through

Z - 28

are
Enclosed in
Separate Envelope

AO 245B    (Rev. 09/11) Judgment in a Criminal Case Case 1:12-cr-00350, Document: 249, Filed: 08-26-2014, Page 6 of 8
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT: PETER LIOUNIS, also known as "Mark Anderson ";
CASE NUMBER: CR-12-00350-01 (ILG)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 900.00 | $ | $ 3,864,080.11 |

☐ The determination of restitution is deferred until _____ An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☑ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| SEE ATTACHMENT A, ANNEXED TO THIS JUDGMENT. ATTACHMENT B, CONTAINING THE ADDRESSES OF THE VICTIMS, IS TO BE FILED UNDER SEAL. | | | |
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# ATTACHMENT A

| CR-12-350 (ILG) - USA v. PETER LIOUNIS LIST OF VICTIMS (ADDRESSES REDACTED) | |
| --- | --- |
| Name: | Loss: |
| Renald/Catherine Anelle | 4,239.50 |
| John Martin Bartel | 900.00 |
| Brian/Angela Beutel | 23,833.89 |
| Jack or David Blecher | 15,000.00 |
| Robert M. Boorigie | 678,761.00 |
| Robert Brinkley | 24,100.00 |
| Gary/Susan Broeke | 1,050.00 |
| William C. Coulter | 19,112.50 |
| Ronald G. Cuthbertson | 1,504,586.00 |
| Beverly Donaldson | 0.00 |
| Mary/Ronald Dusterhoft | 76,330.00 |
| Michael S. Dwyer | 4,000.00 |
| Shawn Elmore | 1,000.00 |
| Douglas A. Forrisma | 2,000.00 |
| John R. Forsberg, II | 41,124.97 |
| James/Wendy Frytegle | 2,238.00 |
| Jaime Graham | 3,780.00 |
| Max/Maria Hadfield | 900.00 |
| Walter Lee Hammock | 6,000.00 |
| Belinda/John Hanle | 7,750.00 |
| Jack/Judy Hoy | 10,000.00 |
| Robert/Shari Irsay | 1,000.00 |
| James Jesmer | 7,050.00 |
| G. Victor/Patricia Johnson | 25,000.00 |
| David A. Kahl | 3,687.50 |
| David Klinkman | 131,575.50 |
| Terry Kramer | 26,765.00 |
| Dennis/Laurie Lamantia | 72,137.50 |
| Dennis Larson | 326,430.50 |
| Robert/Dorothy Laubenthal | 41,375.00 |
| Thomas/Stephanie Liddle | 0.00 |
| Richard Martini | 74,909.24 |
| Lester Toby McCormick | 5,870.00 |
| John M./S.K. McNellis | 90,475.00 |
| Jeffrey H. Miller | 27,100.00 |
| David W. Morin | 8,927.50 |
| RJ Murdock | 0.00 |
| Diana/John Nally | 8,625.00 |
| Martin/Annette Newman | 11,642.50 |
| Carl/Janet Neitzke | 191,331.50 |
| William Nissen, Jr. | 20,170.00 |
| Paul Nowak | 100.00 |
| Mark D. Routes (Adamz' Roofing, Inc.) | 5,640.00 |
| Herman/June Rubin | 34,100.00 |
| Noble/Sybil Shaw | 0.00 |
| Steven M. Spaeth | 2,812.50 |
| Adrienne Stewart/Daniel Boyle | 4,750.00 |
| George C. Swanson | 3,875.00 |
| Lee Tate | 10,000.00 |
| Scott R. Trimingham | 9,050.00 |
| James Vandeveer | 6,150.00 |
| Don E. Vogler | 102,750.00 |
| John/Anna Marie Vogler | 15,000.00 |
| Allen S. Wallace | 19,750.00 |
| Roger Wallace | 16,000.00 |
| Ronald/Dana Way | 6,487.50 |
| Jim Wilde | 4,500.00 |
| F. Joel Witt/Mary Linsacum | 19,550.00 |
| Arthur Zahler | 34,050.00 |
| Audrey M. Hyde/Zahler | 60,000.00 |
| Richard B. Zarbock | 4,737.51 |
| Total | 3,864,080.31 |

NAME: Liudmila Roter    IDENTIFICATION NUMBER:    NO. OF SHEETS ATTACHED:

## MEASUREMENTS AND OTHER FINDINGS

| 20. HEIGHT | 21. WEIGHT | 22. COLOR HAIR | 23. COLOR EYES | 24. BUILD | | | | 25. TEMPERATURE |
|---|---|---|---|---|---|---|---|---|
| 5'4" | 265lbs | Brown | Brown | ☐ SLENDER | ☒ MEDIUM | ☐ HEAVY | ☐ OBESE | |

| 26. BLOOD PRESSURE (Arm at heart level) | | | | | | 27. PULSE (Arm at heart level) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| A. SITTING | SYS. 20 DIAS. 90 | B. RECUMBENT | SYS. DIAS. | C. STANDING (5 mins.) | SYS. DIAS. | A. SITTING | B. RECUMBENT | C. STANDING (3 mins.) | D. AFTER EXERCISE | E. 2 MINS. AFTER |

| 28. DISTANT VISION | | | 29. REFRACTION | | | | 30. NEAR VISION | | |
|---|---|---|---|---|---|---|---|---|---|
| RIGHT 20/ 20 | CORR. TO 20/ | BY | S. | CX | | | CORR. TO | | BY |
| LEFT 20/ 20 | CORR. TO 20/ | BY | Sn | CX | | | CORR. TO | | BY |

**31. HETEROPHORIA** (Specify distance)    Auditory Acuity Intact

| ESO | EXO | R.H. | L.H. | PRISM DIV. | PRISM CONV. | PC | PD |
|---|---|---|---|---|---|---|---|
| | | | Able to Comply | | | | |

| 32. ACCOMMODATION | | 33. COLOR VISION (Test used and result) | 34. DEPTH PERCEPTION (Test used and score) | UNCORRECTED |
|---|---|---|---|---|
| RIGHT | LEFT | | | CORRECTED |

| 35. FIELD OF VISION | | 36. NIGHT VISION (Test used and score) | 37. RED LENS TEST | 38. INTRAOCULAR TENSION | |
|---|---|---|---|---|---|
| RIGHT | LEFT | | | RIGHT | LEFT |

| 39. HEARING | | | 40. AUDIOMETER | | | | | | | | 41. PSYCHOLOGICAL AND PSYCHOMOTOR (Tests used and score) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 250 256 | 500 512 | 1000 1024 | 2000 2048 | 3000 2896 | 4000 4096 | 6000 6144 | 8000 8192 |
| RIGHT WV | /15 SV | /15 | RIGHT | | | | | | | | |
| LEFT WV | /15 SV | /15 | LEFT | | | | | | | | |

**42. NOTES** (Continued) AND SIGNIFICANT OR INTERVAL HISTORY

PMH – Ø
med – Ø
NKDA.
PSH – Ø
SH + 2½ pack/day × 15 years  2. Cocaine × 7 years, Extacy × 5 year

Z-31                Exhibit C

(Use additional sheets if necessary)

**43. SUMMARY OF DEFECTS AND DIAGNOSES** (List diagnoses with item numbers)

**44. RECOMMENDATIONS - FURTHER SPECIALIST EXAMINATIONS INDICATED** (Specify)

| 45A. PHYSICAL PROFILE | | | | | |
|---|---|---|---|---|---|
| P | U | L | H | E | S |
| | | | | | |

**46. EXAMINEE** (Check)

☒ A. IS QUALIFIED FOR    upon review of labs

☐ B. IS NOT QUALIFIED FOR

**45B. PHYSICAL CATEGORY**

| A | B | C | E |
|---|---|---|---|
| | | | |

**47. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER**

| 48. TYPED OR PRINTED NAME OF PHYSICIAN | SIGNATURE |
|---|---|
| LT. P.S. SAINI, PA-C, MPAS | |
| **49. TYPED OR PRINTED NAME OF PHYSICIAN** | SIGNATURE |
| | |
| **50. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN** (Indicate which) | SIGNATURE |
| | E. Frzovoio D.C. |
| **51. TYPED OR PRINTED NAME OF REVIEWING OFFICER OR APPROVING AUTHORITY** | SIGNATURE |
| | 20 AUG 01 |

FPI. LEX.    ♻ Printed on Recycled Paper

Z-32

A-92

Reg No. 48359-054
FCI-Gilmer, P.O. Box 6000
Glenville WV 26351

July 28, 2021

ISRAEL LEO GLASSER
Senior United States District Court Judge
For The Eastern District of New York
225 Cadman Plaza, East
Brooklyn Heights NY 11201

RE: Criminal Docket 12-cr-00350(ILG)

Dear ISRAEL LEO GLASSER,

Sir, I proceeded to trial under Actual Innocence. However, I do sincerely apologize for my rude, disrespetful, and disruptive behavior during Pre-Trial, Trial, and sentencing. During the said time periods I was taking prescription pills that were prescribed to other imates, and as a result I behaved like a fool and a crash dummy. upon arrival here at FCI-Gilmer, I made life changing decisions and choices, that I still honor today and will continue to honor one day at a time for the rest of my life.

Sir, a drug free Peter Liounis is not the same Peter Liounis that was arrested in 2012. From 2014 to the present, the drug free Peter Liounis is a model inmate, maintained employment, regularly attends religious services,

Z-33

received his associate degree in general health physical Business management, was named to the Provosts Honor List in recognition of academic excellence in the Fall 2019 and spring 2020 college semesters; has successfully completed the HVAC program and Drug Education; and has successfully completed the following ACE Programs: Decision making, critical Thinking, Web Design, Adobe Level 1, Develop Leadership Problem Solving, and Financial Budgeting.

      Sir, every day when I wake up, I thank the Lord for all my blessings, and I do everything in my power to become a better person than I was yesterday. Sadly, it takes longer for some people to realize what is important in life and what is not. I have been incarcerated for over 9 straight years and during this time period I have lost my loving grandparents, God father, God sister, aunts, uncles, and dear friends. No words could describe the pain and sadness that I live with each and every day.

      Respectfully, when released or if released early, I will live with my loving parents at their home located in Toms River New Jersey and I will help care for them. I will remain drug free and voluntarily attend the following drug treatment facilities located in Toms River New Jersey: Ocean Medical Services Addiction Treatment Center, Evolve Recovery center, and Quantum Behavior Health Services; I will be employed full time by Freedom Electric and receive full medical benefits. I will regularly attend St. Barbara's Greek church with my loving family and I will assist the church as a volunteer; and slowly but surely I will obtain my

Z- 34

members begins in counseling as a result of so many others battle their addictions and help them to make better decisions.

Sir, I am the first college graduate within my immediate family. Recently, my mom and dad purchased picture frames, placed my college degrees inside the frames, and proudly hung the college degrees in their home. Respectfully, when released or if released early, I will not disappoint God, my loving, caring, and supportive family, this Honorable Court, or myself. Failure is no longer an option, I will remain drug free and I will be a successful, productive, and law-abiding citizen. Thank you for taking the time to read my letter and I pray for my release.

Respectfully Submitted

Peter Liounis

```
GILGD                          INMATE EDUCATION DATA            *    01-14-2022
PAGE 001                           TRANSCRIPT                   *    10:35:45


REGISTER NO: 48332-054      NAME..: LIOUNIS                    FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: GIL-GILMER FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
GIL  ESL HAS    ENGLISH PROFICIENT       12-03-2001 1534 CURRENT
GIL  GED HAS    COMPLETED GED OR HS DIPLOMA  03-13-2002 0926 CURRENT


------------------------- EDUCATION COURSES -------------------------
SUB-FACL    DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
GIL         ASSOCIATES DEGREE:BUSINESS   08-22-2016 05-08-2021  P  C  S     0
GIL         BACHELORS DEGREE:BUSINESS    01-22-2019 05-08-2021  P  C  B     0
GIL         GSC:LABOR-MGMT RELATIONS     08-17-2020 12-10-2020  P  C  P    48
GIL         GSC:SURVEY OF ART            08-17-2020 12-10-2020  P  C  P    48
GIL         GSC:WORKFORCE COMPUTING      08-17-2020 10-08-2020  P  C  P    48
GIL         GSC:US HISTORY SINCE 1877    05-19-2020 06-16-2020  P  C  P    48
GIL         GSC:FINANCIAL SYSTEM & ECONOMY 05-19-2020 06-16-2020  P  C  P    48
GIL         GSC: HUMAN RESOURCE MGMT     05-19-2020 06-16-2020  P  C  P    48
GIL         GSC CONCEPTUAL PHYSICS       01-13-2020 05-08-2020  P  C  P    64
GIL         GSC:ST&P WORKFORCE SOFTWARE  01-13-2020 05-08-2020  P  C  P    48
GIL         GSC:STRATEGIC MGMT PLANNING  01-13-2020 05-08-2020  P  C  P    48
GIL         GSC:RISK MGMT & INSURANCE    01-13-2020 05-08-2020  P  C  P    48
GIL         GSC:COST ACCOUNTING          01-13-2020 05-08-2020  P  C  P    48
GIL         GSC:BUSINESS FINANCE         08-19-2019 12-13-2019  P  C  P    48
GIL         GSC CONCEPTUAL PHYSICS       08-19-2019 12-13-2019  P  C  P    64
GIL         GSC:CAPSTONE BUSINESS EXP.   08-19-2019 12-13-2019  P  C  P    32
GIL         GSC:INTRO TO BUSINESS        08-19-2019 12-13-2019  P  C  P    48
GIL         GSC:MGMT INFO SYSTEM         08-19-2019 12-13-2019  P  C  P    48
GIL         GSC:PRINCIPLES OF ACCT II    08-19-2019 12-13-2019  P  C  P    48
GIL         GSC:PRINP. OF MACROECONOMICS 01-22-2019 05-09-2019  P  C  P    48
GIL         GSC:DIMENSIONS IN PROF DEVELOP 05-28-2019 07-19-2019  P  C  P    48
GIL         GSC:SMALL BUSINESS MGMT      05-28-2019 07-19-2019  P  C  P    48
GIL         GSC:AMERICAN NATIONAL GOVMT  05-28-2019 07-19-2019  P  C  P    48
GIL         GSC: ORGANIZATIONAL BEHAVIOR 05-28-2019 07-19-2019  P  C  P    48
GIL         GSC:INTRO TO STAT. ANALYSIS  03-16-2019 05-17-2019  P  C  P    48
GIL         GSC: OPERATIONS MGMT         01-22-2019 05-17-2019  P  C  P    48
GIL         GSC: PRINCIPLES OF RETAILING 01-21-2019 05-17-2019  P  C  P    48
GIL         VT HVAC                      10-02-2018 04-11-2019  P  C  C   171
GIL         GSC:PRINCIPLES OF MGMT       08-13-2018 12-06-2018  P  C  P    48
GIL         GSC:SURVEY AMERICAN LIT. I   08-13-2018 12-06-2018  P  C  P    48
GIL         GSC:QUANT BUSINESS ANALYSIS II 05-14-2018 06-14-2018  P  C  P    48
GIL         GSC: PRINCIPLES OF MARKETING 01-08-2018 05-04-2018  P  C  P    48
GIL         GSC:APPLIED BUSINESS COMMUN. 01-09-2018 05-04-2018  P  C  P    48
GIL         GSC PRINCIPLES OF ACCT I     08-14-2017 12-08-2017  P  C  P    48
GIL         GSC:BUSINESS LAW II          08-14-2017 12-08-2017  P  C  P    48
GIL         GSC:COLLEGE ALGEBRA          08-14-2017 12-08-2017  P  C  P    48
GIL         GSC:QUANT BUSINESS ANALYSIS I 05-15-2017 07-18-2017  P  C  P    48
GIL         GSC:BUSINESS LAW I           05-15-2017 06-15-2017  P  C  P    48
GIL         FUNDAMENTALS OF SOFTBALL     03-26-2017 05-11-2017  P  C  P    30
GIL         GSC:CRITICAL RD & WRITING II 01-12-2017 05-05-2017  P  C  P    48


G0002        MORE PAGES TO FOLLOW . . .
```

```
GILGD              *       INMATE EDUCATION DATA        *     01-14-2022
PAGE 002 OF 002  * Z-35        TRANSCRIPT              *     10:35:45

REGISTER NO: 48332-054     NAME..: LIOUNIS                  FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: GIL-GILMER FCI
```

```
---------------------------- EDUCATION COURSES ------------------------------
SUB-FACL   DESCRIPTION                START DATE  STOP DATE EVNT AC LV  HRS
GIL        GSC:INTRO TO PUBLIC SPEAKING 01-10-2017 05-05-2017  P   C  P   48
GIL        GSC:FINITE MATH. WITH LAB    01-09-2017 05-05-2017  P   C  P   48
GIL        GSC:REMEDIAL MATH            09-07-2016 12-12-2016  P   C  P   48
GIL        GSC:PRINP.OF MICROECONOMICS  08-29-2016 12-12-2016  P   C  P   48
GIL        GSC:CRITICAL RD & WRITING I  08-29-2016 12-12-2016  P   C  P   48
GIL        GSC:FIRST AID & SAFETY       10-12-2016 11-08-2016  P   C  P   48
GIL        (G)DECISION MAKING-CAI       06-20-2016 10-03-2016  P   C  P   21
GIL        (G)CRITICAL THINKING-CAI     06-20-2016 10-03-2016  P   C  P   10
GIL        (V)HTML WEB DESIGN-CAI       04-25-2016 06-20-2016  P   C  P   18
GIL        (V)ADOBE LEVEL 1-CAI         04-25-2016 06-20-2016  P   C  P   21
GIL        (C)DEVELOP LEADERSHIP-CAI    04-11-2016 04-27-2016  P   C  P   20
GIL        (C)PROBLEM SOLVING-CAI       04-11-2016 04-18-2016  P   C  P   20
GIL        (D)FINANCIAL BUDGETING-CAI   04-11-2016 04-18-2016  P   C  P    9
MCK        RPP(4) SOCIAL SECURITY       08-16-2007 08-16-2007  P   C  P    2
NYM M      EXERCISE PROGRAM             10-20-2003 01-12-2004  P   C  P   75
NYM M      ARTS                         10-20-2003 01-06-2004  P   C  P   30
MCK        GED CLASSROOM 1,0930-1130,M-F 01-28-2002 02-26-2002 P   W  I   10
```

```
---------------------------- HIGH TEST SCORES -------------------------------
TEST         SUBTEST       SCORE    TEST DATE     TEST FACL   FORM      STATE
ABLE         LANGUAGE       6.0     01-03-2002    MCK         F
             NUMBER OPR     7.4     01-03-2002    MCK         F
             PROB SOLV     10.9     01-03-2002    MCK         F
             READ COMP      9.4     01-03-2002    MCK         F
             SPELLING      13.0     01-03-2002    MCK         F
             VOCABULARY    13.0     01-03-2002    MCK         F
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

Z - 36



## Summary Reentry Plan - Progress Report



Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LIOUNIS, PETER 48332-054

SEQUENCE: 00248667
Report Date: 06-25-2021

| | | | |
|---|---|---|---|
| Facility: | GIL GILMER FCI | Custody Level: | IN |
| Name: | LIOUNIS, PETER | Security Level: | MEDIUM |
| Register No.: | 48332-054 | Proj. Rel Date: | 01-10-2033 |
| Quarters: | B01-114L | Release Method: | GCT REL |
| Age: | 49 | DNA Status: | MCK01350 / 07-17-2007 |
| Date of Birth: | 03-08-1972 | | |

A - 95

### Contact Information
Release contact & address
Mary Liounis, MOTHER
8 Crowder Drive, Toms River, NJ 08753 US
Phone (Mobile) : 917-399-6731

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18:1349 MAIL & WIRE CONSPIRACY CT.1; 17:1343 WIRE FRAUD. CT. 2-7; 18:1341 MAIL FRAUD. CT.9 | 240 MONTHS |
| CT16-15:78J(B) & 78F SECURITIES FRAUD | 52 MONTHS |

Date Sentence Computation Began: 08-22-2014
Sentencing District: NEW YORK, EASTERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 486 | Years: 9 Months: 2 Days: 9 | + 857 JC - 0 InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Program Plans

Inmate Liounis arrived at FCI Gilmer in September 2014. During his initial classification he was instructed to enroll in educational programs, and to obtain institutional employments. He has continuously complied with the Unit Team's recommendations since that time, and as a result his custody classification will be reducing to a minimum security level within the next 6 months.

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| GIL | B1 UNT ORD | B1 UNIT ORDERLY | 07-28-2020 |

### Work Assignment Summary

Inmate Liounis is currently employed as a B1 Unit Orderly, where he receives positive work evaluations. He complies with all required task and completes them in a timely manner. Prior to this employment, inmate Liounis has continuously maintained institutional employment, and his work evaluations were always positive.

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| GIL | ESL HAS | ENGLISH PROFICIENT | 12-03-2001 |
| GIL | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-13-2002 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| GIL | C | GSC:LABOR-MGMT RELATIONS | 08-17-2020 | 12-10-2020 |
| GIL | C | GSC:SURVEY OF ART | 08-17-2020 | 12-10-2020 |
| GIL | C | GSC:WORKFORCE COMPUTING | 08-17-2020 | 10-08-2020 |
| GIL | C | GSC:US HISTORY SINCE 1877 | 05-19-2020 | 06-16-2020 |
| GIL | C | GSC:FINANCIAL SYSTEM & ECONOMY | 05-19-2020 | 06-16-2020 |
| GIL | C | GSC: HUMAN RESOURCE MGMT | 05-19-2020 | 06-16-2020 |
| GIL | C | GSC CONCEPTUAL PHYSICS | 01-13-2020 | 05-08-2020 |

Z-31



## Summary Reentry Plan - Progress Report

SEQUENCE: 00248667
Report Date: 06-25-2021

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LIOUNIS, PETER 48332-054

A-96

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| GIL | C | GSC:ST&P WORKFORCE SOFTWARE | 01-13-2020 | 05-08-2020 |
| GIL | C | GSC:STRATEGIC MGMT PLANNING | 01-13-2020 | 05-08-2020 |
| GIL | C | GSC:RISK MGMT & INSURANCE | 01-13-2020 | 05-08-2020 |
| GIL | C | GSC:COST ACCOUNTING | 01-13-2020 | 05-08-2020 |
| GIL | C | GSC:BUSINESS FINANCE | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC CONCEPTUAL PHYSICS | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC:CAPSTONE BUSINESS EXP. | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC:INTRO TO BUSINESS | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC:MGMT INFO SYSTEM | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC:PRINCIPLES OF ACCT II | 08-19-2019 | 12-13-2019 |
| GIL | C | GSC:PRINP. OF MACROECONOMICS | 01-22-2019 | 05-09-2019 |
| GIL | C | GSC:DIMENSIONS IN PROF DEVELOP | 05-28-2019 | 07-19-2019 |
| GIL | C | GSC:SMALL BUSINESS MGMT | 05-28-2019 | 07-19-2019 |
| GIL | C | GSC:AMERICAN NATIONAL GOVMT | 05-28-2019 | 07-19-2019 |
| GIL | C | GSC: ORGANIZATIONAL BEHAVIOR | 05-28-2019 | 07-19-2019 |
| GIL | C | GSC:INTRO TO STAT. ANALYSIS | 03-16-2019 | 05-17-2019 |
| GIL | C | GSC: OPERATIONS MGMT | 01-22-2019 | 05-17-2019 |
| GIL | C | GSC: PRINCIPLES OF RETAILING | 01-21-2019 | 05-17-2019 |
| GIL | C | VT HVAC | 10-02-2018 | 04-11-2019 |
| GIL | C | GSC:PRINCIPLES OF MGMT | 08-13-2018 | 12-06-2018 |
| GIL | C | GSC:SURVEY AMERICAN LIT. I | 08-13-2018 | 12-06-2018 |
| GIL | C | GSC:QUANT BUSINESS ANALYSIS II | 05-14-2018 | 06-14-2018 |
| GIL | C | GSC: PRINCIPLES OF MARKETING | 01-08-2018 | 05-04-2018 |
| GIL | C | GSC:APPLIED BUSINESS COMMUN. | 01-09-2018 | 05-04-2018 |
| GIL | C | GSC PRINCIPLES OF ACCT I | 08-14-2017 | 12-08-2017 |
| GIL | C | GSC:BUSINESS LAW II | 08-14-2017 | 12-08-2017 |
| GIL | C | GSC:COLLEGE ALGEBRA | 08-14-2017 | 12-08-2017 |
| GIL | C | GSC:QUANT BUSINESS ANALYSIS I | 05-15-2017 | 07-18-2017 |
| GIL | C | GSC:BUSINESS LAW I | 05-15-2017 | 06-15-2017 |
| GIL | C | FUNDAMENTALS OF SOFTBALL | 03-26-2017 | 05-11-2017 |
| GIL | C | GSC:CRITICAL RD & WRITING II | 01-12-2017 | 05-05-2017 |
| GIL | C | GSC:INTRO TO PUBLIC SPEAKING | 01-10-2017 | 05-05-2017 |
| GIL | C | GSC:FINITE MATH. WITH LAB | 01-09-2017 | 05-05-2017 |
| GIL | C | GSC:REMEDIAL MATH | 09-07-2016 | 12-12-2016 |
| GIL | C | GSC:PRINP.OF MICROECONOMICS | 08-29-2016 | 12-12-2016 |
| GIL | C | GSC:CRITICAL RD & WRITING I | 08-29-2016 | 12-12-2016 |
| GIL | C | GSC:FIRST AID & SAFETY | 10-12-2016 | 11-08-2016 |
| GIL | C | (G)DECISION MAKING-CAI | 06-20-2016 | 10-03-2016 |
| GIL | C | (G)CRITICAL THINKING-CAI | 06-20-2016 | 10-03-2016 |
| GIL | C | (V)HTML WEB DESIGN-CAI | 04-25-2016 | 06-20-2016 |
| GIL | C | (V)ADOBE LEVEL 1-CAI | 04-25-2016 | 06-20-2016 |
| GIL | C | (C)DEVELOP LEADERSHIP-CAI | 04-11-2016 | 04-27-2016 |
| GIL | C | (C)PROBLEM SOLVING-CAI | 04-11-2016 | 04-18-2016 |
| GIL | C | (D)FINANCIAL BUDGETING-CAI | 04-11-2016 | 04-18-2016 |

## Education Information Summary

Inmate Liounis has completed numerous educational and recreational programs since his arrival. He is currently enrolled in Glenville State College classes and is working towards obtaining his Bachelor's Degree in Business Administration. Additionally, he has completed the HVAC vocational training program, and will be working towards his certification in the near future.

## Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 01-21-2014 | 306 : REFUSING WORK/PGM ASSIGNMENT |

## Discipline Summary

Inmate Liounis has maintained clear conduct since 2014. He complies with all institutional rules and regulations, and he follows instructions given by staff members. He has developed a good rapport with other inmates and staff. Additionally, he has assisted other inmate with procedural documents.

Z - 38



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LIOUNIS, PETER  48332-054

SEQUENCE: 00248667
Report Date: 06-25-2021

A-97

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 07-28-2020 | CURRENT |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 12-30-2019 | 07-28-2020 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 12-27-2019 | 12-30-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 12-20-2019 | 12-27-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 09-16-2019 | 12-20-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 09-13-2019 | 09-16-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 09-06-2019 | 09-13-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 05-09-2019 | 09-06-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 02-12-2019 | 05-09-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 04-19-2018 | 02-12-2019 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 04-04-2018 | 04-19-2018 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 03-02-2018 | 04-04-2018 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 04-21-2016 | 03-02-2018 |
| GIL | A-DES | US DISTRICT COURT COMMITMENT | 09-16-2014 | 04-21-2016 |

### Current Care Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| CARE1-MH | CARE1-MENTAL HEALTH | 10-08-2014 |
| CARE2 | STABLE, CHRONIC CARE | 01-31-2005 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| LOWER BUNK | LOWER BUNK REQUIRED | 07-02-2020 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 05-21-2007 |
| YES F/S | CLEARED FOR FOOD SERVICE | 05-21-2007 |

### Current PTP Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|

*NO ASSIGNMENTS*

### Current Drug Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| DAP DIAG | DRUG ABUSE DIAGNOSIS PENDING | 08-30-2018 |
| ED COMP | DRUG EDUCATION COMPLETE | 04-17-2015 |
| NR WAIT | NRES DRUG TMT WAITING | 10-08-2014 |

### Physical and Mental Health Summary

Inmate Liounis is a Care Level 2 inmate.  He has no medical restrictions and is cleared for Food Service.

### FRP Payment Plan

Most Recent Payment Plan

**FRP Assignment:**  PART    FINANC RESP-PARTICIPATES    **Start: 06-16-2016**

| | | | |
|---|---|---|---|
| Inmate Decision: **AGREED** | **$25.00** | Frequency: **QUARTERLY** | |
| Payments past 6 months: | **$50.00** | Obligation Balance: **$8,994,251.19** | |

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $300.00 | $250.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 3 | ASSMT | $50.00 | $50.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 5 | ASSMT | $900.00 | $625.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST NV | $4,190,164.74 | $4,189,989.74 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
|---|---|---|---|---|---|---|

Z - 39



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LIOUNIS, PETER  48332-054

SEQUENCE: 00248667
Report Date: 06-25-2021

| No. | Type | Amount | Balance | Payable | Status | |
|---|---|---|---|---|---|---|
| **Most Recent Payment Plan** | | | | | | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |

| No. | Type | Amount | Balance | Payable | Status | |
|---|---|---|---|---|---|---|
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
| | | | 06-10-2021 | GIL | PAYMENT | INSIDE PMT | $25.00 |
| | | | 03-10-2021 | GIL | PAYMENT | INSIDE PMT | $25.00 |
| 4 | REST FV | $940,181.34 | $940,181.34 | IMMEDIATE | AGREED | |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***| | | | |
| 6 | REST FV | $3,864,080.11 | $3,864,080.11 | IMMEDIATE | AGREED | |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***| | | | |

A-98

### Financial Responsibility Summary

Inmate Liounis is participating in the Inmate Financial Responsibility Program and is making his court ordered payments as agreed.

### Release Planning

Inmate Liounis plans to reside with his mother in Toms River, NJ.  A relocation of supervision will be completed closer to release.

### General Comments

*** No notes entered ***

Z-40

## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LIOUNIS, PETER 48332-054

SEQUENCE: 00248667
Report Date: 06-25-2021

Name: LIOUNIS, PETER
Register Num: 48332-054
Age: 49
Date of Birth: 03-08-1972
DNA Status: MCK01350 / 07-17-2007

A-99

_____

Inmate (LIOUNIS, PETER, Register Num: 48332-054)

6/25/21
_____
Date

_____
Chairperson

6/25/21
_____
Date

_____
Case Manager

6/25/21
_____
Date

Z - 41

GILGD  606.00  *      MALE CUSTODY CLASSIFICATION FORM      *      04-23-2021
PAGE 001 OF 001                                                      13:44:22

(A) IDENTIFYING DATA

REG NO..: 48332-054          FORM DATE: 11-17-2020          ORG: GIL
NAME....: LIOUNIS, PETER

MGTV: NONE

PUB SFTY: SENT LGTH          MVED:

(B) BASE SCORING

DETAINER: (0) NONE           SEVERITY.......: (3) MODERATE
MOS REL.: 145                CRIM HIST SCORE: (06) 7 POINTS
ESCAPES.: (0) NONE           VIOLENCE........: 4 (6) 5-10 YRS SERIOUS
VOL SURR: (0) N/A            AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED   DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS

(C) CUSTODY SCORING

TIME SERVED.....: (3) 0-25%  PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD   TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE   FAMILY/COMMUN..: (4) GOOD


--- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+17  +19    -1       +16       MEDIUM    N/A                IN      DECREASE

-2   +1    -4                  Min      Low - cause
15   20                                      PSF

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

> 10 yrs

15-4-11

※ Low recividism score 30 FSA

June 21, 2021          Z - 42

Dear U.S.D.C.J.  Israel Leo Glasser,


My name is Lauren Liounis, and I'm writing/typing this letter for my parents Mary and George Liounis; who agree with the aforementioned statements; and we as a family are requesting the release of my brother Peter Liounis; who is an inmate at Gilmer Federal Correctional Facility in West Virgina.  We will sign this letter before a Notary today.

We are asking for the release of Peter our son and brother; who has been incarcerated since 2012.  We have not seen Peter for almost 9 years.

We have been deeply worried since the beginning of the Covid Pandemic; for Peter Liounis has multiple health conditions that put him in the high risk category; if he were to contract the virus.

If Peter is released; we Peter's parents, can house him at our home in Toms River, N.J.  We can help and support him in all ways; as he acclimates to life outside of prison.  He will have his own room, and he can also use one of our cars to travel to and from work; as we own 2 vehicles, that are in fairly good condition.

As we; his parents have turned 78 years old this year of 2021; we are still in a position where we are able to support Peter, with provisions, and we are mentally and emotionally stable.  It would be helpful to us to have Peter home, to help with any physical maintenance to housekeeping; or any other chores if need be; as we are aging.

Our local Greek Church, St. Barbara's is nearby; which Peter has shown interest in attending services there and possibly volunteering; as he has reaffirmed his Christian faith; while at Gilmer; attending church regularly during the duration of his sentence there.  We hope to be reunited with our son Peter, and attend mass together, as a family once again.

My husband and I do not own a computer, and our daughter has helped with the overall composition; of this formal request, in letter form.


We thank you for your consideration Judge I.L. Glasser,

Sincerely,

Mary Liounis _Mary Liounis_

George Liounis _____

Letter composition by and signed by Lauren Liounis _____

Z-43

Exhibit
D

## BOP GUIDANCE ON AEROSOL GENERATING PROCEDURES (AGPs)

### 5/8/2020

Since the emergence of the COVID-19 pandemic, much has been learned about the SARS-CoV-2 virus and its means of transmission. Its primary mode of spread appears to be through respiratory droplets that are expelled by an infected person from actions such as coughing or sneezing. These droplets are then inhaled by another person or spread from high touch surfaces onto another person when they touch the surface and then touch their eyes, nose or mouth. Another manner by which infective respiratory droplets are produced is with aerosol -generating -procedures (AGPs). Therefore, strong consideration must be taken to minimize the use of AGPs as much as possible to mitigate the risk of COVID-19 transmission. Some AGPs that may be utilized within a BOP institution include Continuous Positive Airway Pressure (CPAP), Bi-level Positive Airway Pressure (BiPAP), nebulizer treatments and pulmonary function testing (PFT). Institutions should retrieve a report from BEMR identifying inmates who have been issued a nebulizer or CPAP machine and follow the recommendations below:

GENERAL PRINCIPLES

- Determine whether the AGP is medically necessary. The risk of the procedure given the current situation should be weighed against the risk of temporary discontinuation
- Consider any alternatives that may be available and feasible
- Educate and discuss with the patient the reasoning, including the risks and benefits, for the continued use or discontinuation of a particular AGP.
- If the procedure is deemed medically necessary, implement strategies to mitigate the risk of exposure to other inmates and staff

NEBULIZER TREATMENTS

- Nebulizers are typically used in the setting of an acute exacerbation of chronic obstructive or restrictive pulmonary disease i.e. COPD or asthma. They should not be utilized for chronic baseline disease management.
- To the maximum extent possible, the use of a metered dose inhaler (MDI) should be used instead of a nebulizer. Even in the acute setting, the use of a MDI with a spacer has been shown to be at least as effective as a nebulizer when used correctly. Be aware that it may be necessary to use more doses per event or more frequent dosing than the baseline prescription for the medication.
- If a nebulizer must be used:
  - Administer the treatment in an airborne infection isolation (AII) room when possible. If not available, use a single room with a solid door
  - Attach an in-line viral filter (e.g. Airlife 001851) at the end of the 6 inch flex tube that extends from the nebulizer kit
  - Minimize number of staff involved in administering the nebulizer and the amount of time spent in the room.

2-43

Exhibit
D

CPAP/ BiPAP

- Most patients use a CPAP machine for sleep apnea. In most cases, it may be reasonable to consider that the risks of aerosolization of the SARS CoV-2 virus leading to transmission of the disease during a pandemic outweigh the risks of the short-term discontinuation of CPAP use.
- In cases where CPAP use is considered to be for mild to moderate sleep apnea with no significant co-morbidities, the CPAP machines should be retrieved from the patient until the risks of transmission at the institution in the setting of the COVID pandemic have abated.
- In patients with severe sleep apnea with co-morbidities such as morbid obesity, pulmonary hypertension, cardiomyopathy, etc., even the temporary discontinuation of BiPAP or CPAP may constitute a higher risk. When the decision is made to allow the patient to continue using CPAP/BiPAP, the following procedures should be considered for implementation in an effort to mitigate the spread of COVID-19:
  - o If possible, these patients should be tested for COVID-19
    - ▪ Patients that test positive should be placed in isolation.
      - o A contact investigation should be performed and any identified close contacts as well as inmates bunking nearby should be tested for COVID-19, have a symptom screen and temperature check, and placed in quarantine or isolation as indicated.
  - o For patients that test negative, housing adjustments should be made as feasible. In order of preference:
    - ▪ They should be single celled with a solid door that closes. The door should be closed when BiPAP or CPAP is in use.
      - o The door should be closed when BiPAP or CPAP is in use.
      - o The CPAP/BiPAP Sign should be posted on the door to alert staff regarding necessary PPE if entering the room.
      - o When in the room, staff should use appropriate PPE to include: N95 mask, face shield or eye protection, gown and gloves
      - o Minimize number of staff and the amount of time spent in rooms where CPAP/BiPAP are in use.
      - ⊜ Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user.
      - o If single cells are limited, prioritize use of these rooms to patients under quarantine.
    - ▪ Cohort CPAP wearers to one area of unit in a lower bunk
    - ▪ House them maximally distanced from others
  - o CPAP/BiPAP must be set up and used with a full-face, non-vented CPAP mask with an in-line viral filter attached to the intake and exhalation ports. The viral filters should be changed daily. See attached diagram for setup.
  - o If the recommended setup is not readily obtainable, the humidifier chamber should be




- When in the room, staff should use appropriate PPE to include: N95 mask, face shield or eye protection, gown and gloves
- As of the writing of this guidance, there are no special or increased cleaning recommendations for CPAP/ BiPAP equipment or machines. Patients should be reminded to perform their usual regularly scheduled daily and weekly cleaning regimens as recommended by the equipment manufacturers.
- Room and equipment must be disinfected prior to allowing a new patient to occupy a room previously used by a CPAP/BiPAP user.

## PULMONARY FUNCTION TESTING/ PEAK FLOWS

- The performance of PFTs and peak flow testing are generally not considered necessary in the acute setting and should be deferred until concerns of the pandemic have abated

## SUPPLEMENTAL OXYGEN

- Within BOP Institutions, the use of supplemental oxygen is typically low flow via the use of nasal cannula. This is not considered to be an AGP and should not require specific precautions.
- Use of high flow oxygen, humidified trach masks or non-rebreathers do involve AGPs and their use should be performed with the same precautions and measures as with the use of CPAP/ BiPAP above

## REFERENCES

Adapted from California Correctional Health Care Services Memorandum: Aerosol-Generating Procedures (AGPs); April 8, 2020

Tran, K., Cimon, K., Severn, M., Pessoa-Silva, C. L., & Conly, J. (2012, April 26). *PLoS One 2012; 7(4): e35797.* Retrieved April 2020, from NCBI: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3338532/

https://www.embeds.co.uk/wp-content/uploads/2020/03/advice-on-acute-niv-technical-aspects-final-16-march-2020.pdf

Guidance regarding coronavirus (COVID-19) and Obstructive Sleep Apnea (OSA):
for people who routinely use continuous positive airway pressure (CPAP), their families and health care workers, 20 March 2020; British Thoracic Society; https://brit-thoracic.org.uk/about-us/covid-19-information-for-the-respiratory-community/

Z-43

Exhibit o

Switch to a non-vented full face mask
(Resmed Non vented full face mask – Small #61739, Med #61740, Lge #61741)
covers mouth and nose and has no holes in the mask or elbow attachment on
the mask.



From the elbow on the mask, attach a swivel connector (Respironics - #7041).



From there, attach a viral filter (Airlife - #001851).



From the viral filter, attach an exhalation port (Respironics - #312149).

# Respiratory Precautions
## Airborne/Contact/Eye Protection
### CPAP or BiPAP IN USE
*PRECAUCIONES de Sala de cuarentena*




## TO PREVENT THE SPREAD OF INFECTION,
## ANYONE ENTERING THIS ROOM SHOULD USE:

*Para prevenir el esparcimiento de infección,
cualquiera que entre a esta habitación debe utilizar:*

| | |
|---|---|
| | **HAND HYGIENE** <br> *Hygiene De Las Manos* |
| | **N-95 RESPIRATOR (Fit-Tested)** <br> *Respirador N-95* |
| | **GOWN** <br> *Bata* |
| | **Eye Protection** <br> *Protección para los ojos si contacto cercano* |
| | **Gloves** <br> *Guantes* |
| **NOTICE** <br> KEEP THIS <br> DOOR CLOSED | **Door to this room remains closed when CPAP or BiPAP is in use.** |

TRULINCS 48332054 - LIOUNIS, PETER - Unit: GIL-B-A

---------------------------------------------------------------------------------------------

FROM: Health Services
TO: 48332054
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/30/2021 08:32:03 AM

Testing will be scheduled as it is clinically indicated and recommended by your provider.

>>> ~^!"LIOUNIS, ~^!PETER" <48332054@inmatemessage.com> 8/27/2021 9:05 AM >>>
To: Dr. Anderson
Inmate Work Assignment: Orderly

Dear Dr. Anderson
As it relates to the Cat-Scan for the Lymphoma I kindly ask that my neck and head also be scanned a long with my entire body from my waist and up. My neck has been swollen for a long period of time and I experience discomfort, pain, breathing obstruction, trouble swallowing, and uncontrollable drooling. As for my head I deal with constant pressure, frequent headaches, dizziness, and my short term memory is really bad.

Thank you kindly for all your help

Peter

TRULINCS 48332054 - LIOUNIS, PETER - Unit: GIL-B-A

--------------------------------------------------------------------------------

FROM: Health Services
TO: 48332054
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/30/2021 01:48:41 PM

Mr. Liounis, I believe everything is being taken care of. It may seem as though it is not. You know things are little bit delayed due to COVID 19. I have forwarded your email to Dr. McCoy. I am going to schedule you another visit with him so that he can discuss more in depth. I suggest you write down any question that you may have and get a pen and paper to write down the answers. Let me know if you still have any questions after you see him. Good luck

>>> ~^!"LIOUNIS, ~^!PETER" <48332054@inmatemessage.com> 9/30/2021 10:09 AM >>>
To: Ms. Okoro
Inmate Work Assignment: orderly

Dear Ms. Okoro
Dr. Anderson recently reviewed my medical records with me regarding a Diagnosis of Lymphoma and agreed that we need a second look via Cat Scan. In 2003 mild to moderate Lymphadenopathy was noted in the AP Window, Subcarinal, Precarnial regions, of the Mediastinum, as well as the Bilateral Axillary regions. This was concealed from me for over 18 years therefore I never received any treatment. Dr. McCoy says a Cat Scat was ordered by vascular for my abdomen and pelvis. I humbly ask that the Cat Scan be modified to cover all the areas of my body listed above because I wont be able to take another Cat Scan for some time due to the exposure of ionizing radiation. We are far beyond a paper cop-out here, as stated Dr. Anderson and I have already discussed the matter face to face after he reviewed the medical records regarding the Diagnosis of Lymphoma. Everyday I suffer from swelling, discomfort, some pain, and severe shortness of breath relating to my neck, chest, and stomach. Now that FCI-Gilmer and I are aware of the said diagnosis and my symptoms that relate to the diagnosis I humbly and kindly ask that the CAt Scan be modified and that I be seen by an oncologist. Lastly, the above diagnosis may also relate to my vascular problems and my Vascular surgeon Dr. Endeny doesn't even know that they exist because the findings were also concealed from him. First I turned to Dr. Anderson, Second to Dr. Mccoy and now I turn to you Ms. Okoro and humbly and kindly ask for help. Please respond and /or correct this matter. Thank You Kindly!

TRULINCS 48332054 - LIOUNIS, PETER - Unit: GIL-B-A

---------------------------------------------------------------------------------------

FROM: 48332054
TO: Health Services
SUBJECT: ***Request to Staff*** LIOUNIS, PETER, Reg# 48332054, GIL-B-A
DATE: 01/22/2022 11:50:45 AM

To: Dr. McCoy
Inmate Work Assignment: orderly

Dear Dr. McCoy

I have sent numerous Emails for months and months to you and other medical staff here at FCI-Gilmer regarding my Cat-Scan of my chest and neck and stomach that was ordered months and months ago. as of today 1/22/22 I have still not received my open Cat-Scan and I cant even get a response from medical staff. I have emphasized the pain, discomfort, shortness of breath, swelling,, pressure, drooling, tightness, hot sweats, trouble swallowing, in the neck and esophagus regions and tightness and spasms and pollupatations of the heart that I'm feeling every day of my life; to you and other medical staff here at FCI-Gilmer. I remind you sir that I have a mass pressing against my heart wall, Mild to moderate and maybe after 18 years of no treatment significant lymphadenopathy in many different regions of my body, and a provisional diagnosis of Lymphoma which has never been ruled out because no biopsy was taken. This is clearly deliberate indifference.

I - 4.8

4/21/2022 7:21 PM         -> TX 42073  Final Report     RECEIVED 04/21/2022 07:34PM
                                                              Page 1 of 1



# TridentCare

SCHRYVER MEDICAL | DIAGNOSTIC LABORATORIES AND RADIOLOGY
MOBILEX USA | US LABORATORIES | AMERICAN DIAGNOSTIC SERVICES

**MIDWEST REGION**
6165 Huntley Road
Columbus, OH 43229
(800) 932-2222

**42073-FCI GILMER**
201 FCI LANE
GLENVILLE, WV 263519500

| | |
|---|---|
| Claim Number : | 36861220 |
| Date of Service : | 04/21/2022 |
| Patient Name : | LIOUNIS, PETERS |
| Sonographer: | GEORGIA CRISWELL |
| Ordering Provider: | EMERY B MCCOY, DO - (NPI: 1477665768) |
| Interpreting Physician: | PRAKASH N PATEL, MD - (NPI: 1639148729) |
| Report Date: | 4/21/2022 7:16:19 PM |

4F 332 - 054

DOB : 03/08/1972   Gender   M
Room::

## ULTRASOUND REPORT

ULTRA THYROID/SOFT TIS HEAD/NK

Results: The right lobe of the thyroid gland measures 3.3 x 1.8 x 1.3 cm, left lobe
measures 2.7 x 1.5 x 1.4 cm and the isthmus measures 4.6 mm in thickness.

the thyroid gland demonstrates slightly heterogeneous echotexture but no focal
nodule.

Conclusion: Small, slightly heterogeneous thyroid gland but without a focal nodule.

Electronically signed by PRAKASH N PATEL, M.D. 4/21/2022 7:16:19 PM EDT. .

**FCI GILMER**
201 FCI Lane
P.O. Box 5000
Glenville,  WV  26351

**Statement Concerning use of Results:**
I have reviewed this diagnostic report and the results have or will be used in the treatment of the patient's medical condition.

Ordering Provider Signature: _____

EMERY B MCCOY, DO - (NPI: 1477665768)

CONFIDENTIALITY NOTICE: This report (including any accompanying files or documents) is intended for the use of TridentCare or the intended recipient, and may contain information that is privileged or otherwise confidential. If you are not the intended recipient, or person responsible for delivering this report to the intend recipient, be advised that any review, dissemination, distribution, printing or copying of this report (including any accompanying files or documents) is strictly prohibited. If you received this report in error, please immediately notify the TridentCare Privacy Office toll free at 866.686.1717, and providing your name, telephone number and the date and destroy this report (including any accompanying files or documents).

*If you have questions regarding these results or would like to consult with a Rely Radiologist please call 972-468-3590*         Page  1   of  1

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America v.

_____

Peter Liounis

**CERTIFICATE OF SERVICE**
Docket Number: 22 - 716

2022 MAY 20 PM 4:21 RECEIVED

I, Peter Liounis_____, hereby certify under penalty of perjury that on
(name)

May 16, 2022_____, I served a copy of _Appellant Appendix_
(date)

_____
(list all documents)

by (select all applicable)* Certified mail/signature Confirmation No. 7021 3720 0001 6053
3758

- [x] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

AUSA Jonathan P. Lax, USAO-EDNY, 271 Cadman Plaza, East, Brooklyn NY 11201

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

May 16, 2022_____          Pete e_____
Today's Date                    Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form

Peter Liounis
# 48332-054
Federal Correctional Institution - Gilmer
P.O. Box 6000
Glenville WV 26351

**SENDER: *COMPLETE THIS SECTION***

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

clerks office
united states Court of Appeals
united states Courthouse
40 Foley Square
New York NY 10007



9590 9402 7372 2028 3736 31

2. Article Number *(Transfer from service label)*

7021 2720 0001 6053 2772

PS Form **3811**, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
    If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7021 2720 0001 6053

USM4LD
SDNY



clerks office
united states Court of Appeals
united states Courthouse
40 Foley Square
New York NY. 10007

(Appellant Appendix)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA )
    Plaintiff-Appellee, )
 
V. ) Docket No, 22-716
 
PETER LIOUNIS )
    Defendant-Appellant )

PRO-SE APPELLANT BRIEF

Peter Liounis, pro-se, hereinafter ("Appellant")
respectfully submits his timely filed Pro-Se Appellant
Brief regarding the lower Court [324] memorandum
and order filed on March 15, 2022 DENYING Appellants
motion for Compassionate Release in full, Respectfully,
The lower Court abused it's discretion by acting arbitrarily
and irrationally, for failing to consider judicially recognized
factors constraining it's exercise of discretion, by relying
on erroneous factual and legal premises, and committing
errors of law, and for failing to address Arguments which Precluse meaningful
Appellate Review. APPLICABLE LAW

The compassionate release statute, 18 U.S.C. section 3582(c)
(1)(A), as amended by the First Step Act ("FSA") on December 21,
2018, provides in pertinent part;

    (c) Modification of an Imposed Term of Imprisonment,-
The Court may not modify a term of imprisonment once it has
                Page 1 of 30

PRO-SE APPELLANT BRIEF

been imposed except that -

(1) in any case -

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring a motion on the defendants' behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendants' facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that -

(i) extraordinary and compelling reasons warrant such a reduction... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ... Further, 28 U.S.C. section 994(t) provides that "[T] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

The Guidelines policy statement at section

Page 2 of 30

## PRO-SE APPELLANT BRIEF

1B1.13 provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 u.s.c. section 3553(a), to the extent that they are applicable", and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 u.s.c. section 3142(g)." Although the Second Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants. see United States v. Brooker, 976 F.3d 228, 238 (2d cir, 2020), courts of Appeals have recognized that it continues to provide important "Guideposts", United States v. McGee, 992 F.3d 1035, 1048 (10th cir, 2021), see United States v. Gunn, 980 F.3d 1178, 1180 (7th cir, 2020). ("the substantive aspects of the Sentencing Commission's analysis in section 1B1.13 and it's application Notes provide a working definition of extraordinary and compelling reasons; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused").

    In Application Note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The Note provides as follows:

    1. Extraordinary and compelling Reasons, - Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

Page 3 of 30

PRO-SE APPELLANT BRIEF

(A) Medical Conditions of the Defendant —

(i) the defendant is suffering from terminal illness (ie., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (ie., probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) the defendant is —

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deterioration of physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and from which he or she is not expected to recover...

(c) Family circumstances —

(i) the death or incapacitation of the defendants' spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendants' case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (c),

Page 4 of 30

PRO-SE APPELLANT BRIEF

moreover, courts are not limited to the Guideline provisions defining what constitutes extraordinary and compelling; indeed, courts are "empowered to consider any extraordinary and compelling reasons that a defendant raises." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020)(citing United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

1. Appellant has established extraordinary and compelling reasons to justify consideration of a Sentence reduction.

    (A) Appellant has co-morbid conditions that make him particulary susceptible to contracting COVID-19 while at FCI-Gilmer; Appellant contends he presents extraordinary and compelling circumstances based upon his multiple co-morbid health conditions; (Hypertension see Government DE 320, Document 320-1 at 28 ("Gov't 320-1")), (Asthma - Gov't 320-1 at 1), (morbid obesity - Gov't 320-1 at 29), (severe sleep apnea - Gov't 320-1 at 29), (significant vascular disease - Gov't 320-1 at 7), (chronic inflammatory lung disease - Gov't 320-1 at 7), (history of Heart disease - Gov't 320-1 at 1), (history of Bronchitis - Gov't 320-1 at 1), (Lymphedema - Gov't 320-1 at 1), (pedal Edema - Gov't 320-1 at 1), (chronic gout - Gov't 320-1 at 26), (Allergic rhinitis - Gov't 320-1 at 29), (chronic sinusitis - Gov't 320-1 at 22), (provisional diagnosis Lymphoma - Gov't 320-1 at 83), (Abnormal configuration of the left hilar region which presents a bulging contour of the left cardiac border and slight compression of the body T11 - Gov't 320-1 at 89). (Lymphadenopath is noted in the AP window, subcarinal, precarinal regions of mediastin as well as in the bilateral axillary regions - Gov't 320-1 at 85).

## PRO-SE APPELLANT BRIEF

(Several regions of mild focal pleural thickening is noted in the posterior aspect of the left hemithorax - Govt 330-1 at 85), (former smoker - Appellant DE 323 Exh. B) 2-8 / 2-10 : and (appellant suffers from major depressive disorder - Appellant DE 323 Exh. A), 2-11 Here, the district Court states: "Liounis asserts he suffers from lymphoma, his medical records do not support that diagnosis", Id [324] Order 3/15/22, this 2-12 part 5 is a provisional diagnosis of lymphoma that has not been ruled out via biopsy. See Govt 330-1 at 1, moreover, the district Court does not address the long list 2-1 of co-morbid conditions that in fact make appellant particularly susceptible to contracting covid-19 while at FCI-Gilmer.

Additionally, the fourth circuit has stated "covid-19 raises medical issues in the prison context that are particularly serious - it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal" United States v. High, 997 F, 3d 181, 185 (4th cir 2021). The CDC has found individuals with obesity, hypertension, and asthma as here are more likely to get "very sick" and are more likely to be hospitalized "from covid-19", see CDC, People with certain medical conditions Feb. 25, 2021 (available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html) (last visited 3/10/2022), and CDC, People with moderate to severe Asthma Apr. 7, 2021 (available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html) (last visited 3/11/2022). The CDC has also reported, for currently hospitalized covid-19 patients, those with metabolic diseases such as those with obesity comprise 50.7% of patients, those with hypertension comprise 56.2% of patients, and those with asthma comprise 12.5% of patients. see COVID-Net, COVID-19-

Page 6 of 30

## PRO-SE APPELLANT BRIEF

Laboratory-confirmed Hospitalizations, "selected underlying medical conditions" (include data from Mar. 1, 2020 through Dec. 31, 2021) (available at: https://gis.cdc.gov/grasp/covidnet/covid19-5h.tml) (last visited 3/11/2022).

Respectfully, the district Court states: "he is receiving medical care and is not experiencing any problems from his underlying medical conditions." Id [324] order 3/15/22 at 5. Appellant is experiencing problems from his underlying medical Conditions as follows: Asthma - on 2/9/22 Appellant was taken to Stonewall Jackson Hospital ER for a Severe Asthma attack Z-13 and Z-14 see Pro-se Appellant Brief Exhibits 2 and 3, chronic inflamatory lung disease - on 2/24/22 Appellant suffered pleuretic right sided chest, see Prose Appellant Brief Exhibit 1, Z-15 and on 3/3/22 Appellant suffered pleuretic left sided chest. see pro-se Appellant Brief Exhibit 7, Z-16 Gout - on 4/11/22 Appellant suffered a flare-up of Gout, see Pro-se Appellant Brief Exhibit 4, Z-17 Hypertension - on 3/3/22 Appellant's Right Arm blood pressure was 142/98, see Pro-se Appellant Brief Exhibit 8, Z-18 and on 3/28/22 Appellants blood pressure was right arm 167/105, left arm 167/114, and right arm again 148/93, see Pro-se Appellant Brief Exhibits 5 and 6, Z-19 and Z-20 Morbid Obesity - on 1/6/22 Appellant weighed 331.0 Lbs, see Pro-se Appellant Brief Exhibit 9, Z-21 Here, Appellants BMI increased from 45 to 49 because (i) the low-fiber, high-fat, high-sodium, and high-carbohydrate meals provided by the BOP, and (ii) Exercise triggers Appellants Extrinsic asthma. In all fairness to USDCJ Israel Leo Glasser the medical records cited above were not previously available to the Appellant. Appellant humbly asks the Second Circuit to please review and consider the Pro-se Appellant

PRO-SE APPELLANT BRIEF

Brief Exhibits 1 through 10 cited above in support of the requested relief,

FCI-Gilmer was on level 3 operations (full lockdown for over 18 months, on that level appellant was only permitted out of his cell to shower for 5 minutes three times a week, no cleaning supplies, religious services, programming, education, recreation, visits, phones, email, hand sanitizer, hygiene products, laundry, and couldn't social distance from roomate, and poor ventilation. see appellant DE 315 pages 3 through 7, DE 321 pages 18 through 22, and DE 323 pages 1 through 3. Here, appellants major depressive disorder has also worsened with the harsh pandemic conditions in custody. see appellant DE 323 Exhibit A 2-11 "Depressive disorder." Court's have recognized the significantly more punitive nature of prison sentences served during the pandemic, see united States v. Gause, 7:19-cr-41-FL, DE 60 (E.D.N.C. Apr. 28, 2021) (citing united states v. Kibble, 992 F.3d 326, 336 (4th cir. Apr. 1, 2021) ("A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be"), united States v. Rose, 2022 U.S. Dist LEXIS 706 (S.D.N.Y. Jan. 3, 2022) (when the court resentenced mr. Rose, it did not anticipate the pandemic and the effects of the pandemic on incarcerated inmates).

The BOP houses appellant at FCI-Gilmer, appellant is assigned to a two man cell, approximately 10 feet by 12 feet, with two bunk beds, two lockers, a toilet, a sink, writing desk, and 2 chairs. Appellants unit B-1 has 128 assigned men, who share a common area which is roughly 50 feet by 30 feet, this common area contains 12 showers, 6 telephones, a station with 6 computers and 6 chairs, Ice machine, 2 staircases, and 2 tables

## PRO-SE APPELLANT BRIEF

with 8 seats, appellant cannot social distance and only about 10% of inmates and staff here at FCI-Gilmer wear masks despite mandates to do so. moreover, Appellant alerted the lower court of recent major break through infections here at FCI-Gilmer, see appellant DE 322-Supplement Insupport, filed on 1/4/22 and appellant DE 323 - motion to Expedite, pages 1 and 2, filed on 2/17/22. From 12/20/21 through 3/11/22 nearly 20% of inmates at FCI-Gilmer were infected with, died from, or were still recovering from it's most recent COVID-19 outbreak, see BOP, COVID-19 Coronavirus "COVID-19 Cases" (available at: https://www.bop.gov/coronavirus) (last visited 3/11/2022). alarmingly, the lower court discregards the major breakthrough infections described above in it's entirety and chooses to Deny appellants motion for Compassionate Release on 3/15/22, a day that no cases of covid-19 were reported, see Lower court order (324) page 2-12 4 and 5, for all the reasons advanced above coupled with appellants co-morbid conditions establishes a particularized susceptibility and a particularized risk to COVID-19 while at FCI-Gilmer, see United states v. Feiling, 453, F.3d Supp, 3d 832, 841 (E.D. Va. 2020) ("Courts have found extraordinary and compelling reasons for Compassionate Release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility"). see Appellant DE 315 pages 2-11, DE 321 pages 2-5, and DE 323 pages 1-9.

Courts have granted compassionate Release for vaccinated inmates with co-morbid conditions, see United states v. William Thompson, No. 42, CMECF No, 4:20-CR-23-BO-1 (E.D.NC oct. 1, 2021) (fully vaccinated with obesity copD,

Page 9 of 30

PRO-SE APPELLANT BRIEF

asthma, hypertension, edema, and degenerative joint disease); united states v. Dennis sawyer, No, 5:15-cR-160-Bo-1, CMECF No. 63 (E.D.N.C, June 15, 2021) (fully vaccinated with obesity, kidney failure, hypertension, diabetes, and sleep Apnea). united states v. christopher Palmer, No. 8:13-cR-623-PWG, CMECF no, 142 (D, md, July 29, 2021) (fully vaccinated with sickle cell anemia, deep vein thrombosis, and pulmonary embolism and no active facility-specific covid cases), united states v. mark Anthony Andrews, No, 3:93-cR-031-RLJ-DCP-5, CMECF No, 1170 (D, Tenn, July 21, 2021) (fully vaccinated with hypertension, unspecified asthma, knee pain, kidney disease, varicose veins with no active facility specific covid cases)(order later amended to include a term of supervised release), united states v. mahmood Hussain, 2021 WL 3367822, No, 13:cR-661-PWG (D, md, Aug. 3, 2021) (fully vaccinated with asthma, hypertension pre-diabetes, hyperlipidema, obesity, history of smoking with only one active covid staff case), united states v. Hegie, 2022 u.s. Dist, LEXIS 35710 (D. md march 1, 2022) (fully vaccinated with obesity equating to BMI of 31.9 and asthma)("[T]he fact of vaccination does not defeat every underlying health condition that might otherwise render an individual eligible for compassionate release" citing united states v. moore, 2022 u.s. Dist LEXIS 7632 at *33 (D. md, Jan 14, 2022), united states v. Torrey williams, 2022 u.s. Dist. LEXIS 61053 (E.D. N.C, Apr. 1, 2022) (fully vaccinated with asthma and chronic lung disease), see Appellant DE 321 pages 5 through 12, see also Appellant DE 323 pages 3 through 9, Appellant respectfully

<u>PRo-SE APPELLANT BRIEF</u>

maintains his vaccination status does not eliminate the risk
of his contracting and becoming seriously ill or dying from COVID-19.

(B) Even after having received the COVID vaccine,
Appellant may not be well protected from the risks associated with
the virus because he is obese, the vaccine may not sufficiently
protect against all virus variants, and individuals who are
vaccinated can still become infected with COVID-19.

FIRST: COVID vaccinations may not be
effective on individuals who are obese, leaving them at increased
risk from COVID-19. Here, Appellant is morbid obese with a BMI
of 49. CDC guidance and other research warns the COVID-19
vaccine may not be effective, or is less effective, on individuals
who are obese and outcomes are worse for these individuals, see
CDC, overweight & obesity, "obesity worsens outcomes from COVID-19"
Feb, 17, 2022 (available at: https://www.cdc.gov/obesity/
data/obesity-and-covid-19.html#covid19)(last visited 3/11/2022).
Raul Pellini et al., obesity May Hamper SARS-CoV2 Vaccine
Immunogenicity Feb. 26, 2021 (available at: https://www.
medrxiv.org/content/10.1101/2021.02.24.21251664v1.full.pdf.)
(last visited 3/11/2022)(finding antibody response "was more efficient
in the group with under- and normal- vs the group with pre- and
obesity participants" and concluding the findings "imply that
female, lean and young people have an increased capacity to
mount humoral immune responses compared to male, overweight
Page 11 of 30

PRO-SE APPELLANT BRIEF

and older populations"). Here, appellant is 50 years old, the CDC warns obesity "may triple the risk of hospitalization due to a COVID-19 infection and also warns those who are overweight may also be at increased risk, and warns that obesity is "linked to impaired Immune function" and decreased lung capacity (making ventilation difficult). See CDC, Overweight & Obesity, "Obesity worsens Outcomes from COVID-19" Feb, 17, 2022 (available at: https://www.cdc.gov/obesity/data/obesity-and-covid-19.html#COVID19) (last visited 3/11/2022) (emphasis added). At least one district judge in the EDNC, has found this guidance and research to be persuasive such that it granted compassionate release for severely obese defendants as here (with other medical issues) as here and who received the vaccine as here, See Sawyer, 5:15-CR-160-BO-1 CMECF No. 63 supra and Thompson, 4:20-CR-23-BO-1 CMECF No. 42 supra. Further, researchers found that "healthcare workers with obesity produced only about half the amount of antibodies in response to a second dose of the [vaccine] compared with health people," see Geddes, Linda, Pfizer vaccine may be less effective in people with obesity, study says, The Guardian Feb, 28, 2021 (available at: https://www.theguardian.com/world/2021/Feb/28/pfizer-vaccine-less-effective-obese-study) (last visited 3/11/2022), Research suggests that those with obesity are also at an increased risk of dying from COVID-19 by nearly 50%, and at an increased risk of hospitalization by 113%. see Boseley, Sarah, "obesity increases risk of Covid-19 death by 48%, study finds," Aug. 26, 2020 The Guardian (available at: https://

Page 12 of 30

PRO-SE APPELLANT BRIEF

www.theguardian.com/world/2020/aug/26/obesity-increases-risk-of-covid-19-death-by-48-study-finds) (last visited 3/11/2022). Accordingly, even though Appellant is vaccinated, studies suggest that his morbid obesity with a BMI of 49 and his age of 50 would likely prevent his immune system from becoming fully inoculated from the virus, and he continues to remain at a high risk from COVID.

SECOND: The current Covid-19 vaccinations may not protect against all strains of the virus: the CDC has warned that some COVID-19 variants appear more contagious and deadly than the original strain, and even with vaccines, breakthrough infections occur with Delta and Omicron variants. The CDC reports two variants of concern in the United States: (a) Omicron (B.1.1.529) as it may spread more easily than other variants (although severity of illness and death is unclear as it is such a new variant), and (b) Delta (B.1.617.2) as it spreads more easily and may cause more severe cases than other variants, see CDC, What You Need To Know About Variants Feb. 25, 2022 (available at: https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html) (last visited 3/11/2022). Vaccine producers Pfizer, Moderna, Novavax, and Johnson & Johnson all admitted their vaccines are less effective in studies and clinical trials for variant B.1.351, which was the dominant strain early last year in South Africa. See Benjamin Mueller et al., South Africa says AstraZeneca's COVID-19 vaccine is Not Effective at stopping variant, NY Times

Page 13 of 30

PRO-SE APPELLANT BRIEF

Feb: 7, 2021, (available at: https://www.nytimes.com/2021/02/07/world/south-africa-astrazeneca-vaccine.html)(last visited 3/11/2022). A report published by the CDC found, in studies of frontline workers during the recent predominance of the Delta Variant, COVID vaccine efficacy rate fell from 91% to 66%. See CDC, "Morbidity and Mortality Weekly Report," Effectiveness of COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Frontline Workers Before and During B.1.617.2 (Delta) Variant Predominance Aug. 24, 2021 (available at: https://www.cdc.gov/mmwr/volumes/70/wr/mm7034e4.htm?s-cid=mm7034e4_w) (last visited 3/11/2022). The CDC has also noted that "[e]stimates of COVID-19 mRNA vaccine effectiveness have declined in recent months because of waning vaccine induced immunity over time, possible increased immune evasion by SARS-CoV-2 variants, or a combination of these and other factors". See CDC, "Morbidity and Mortality weekly Report," Effectiveness of a Third Dose of mRNA Vaccines Against Covid-19-Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance-VISION Network 10 states, August 2021-January 2022, Jan 28, 2022 (available at: https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e3.htm) (last visited 3/11/2022). In west virginia, where FCI-Gilmer is located, the CDC reports the state has been affected by .66% of the B.1.617.2 version (the Delta variant) and 98.9% of the B1.1.529 (omicron) and .43% of BA.2 (the newest omicron -

Page 14 of 30

PRO-SE APPELLANT BRIEF

variant), see CDC, Variant Proportions, "Estimates of weightened Proportions of Variants by Jurisdiction" march 8, 2022 (available at: https://covid.cdc.gov/covid-data-tracker/#variant-proportions,) (last visited 3/11/2022), Because two omicron variants and the Delta covid variants predominantly affect West Virginia residents, the vaccine may not necessarily protect Appellant from becoming seriously ill from COVID-19, see united states v. James Johnson, No. 98-CR-860 (7) (ARR), 2021 WL 5755047 (E.D.N.Y. Dec. 3, 2021) (finding that risk of breakthrough infections meant that medically vulnerable defendant could still use covid-19 to support compassionate release motion despite the fact that he was vaccinated), united states v. Seshan, No. 14CR.620 (JFK), 2021 WL 5861228 (S.D.N.Y. Dec. 10, 2021) (fully vaccinated inmate could show extraordinary and compelling reasons based on underlying medical issues and the extreme risk created by Delta variant. Rejecting Governments arguments about vaccine and the low risk of infection at FMC Devens), united states v. Rucker, 27 F.4th 560 (2022) (the Seventh circuit noted that its decision in united states v. Broadfield, 5 F.4th 801 (7th cir. 2021) was handed down prior to the omicron variant becoming the dominant variant in the united states, and that the variant had an increase in breakthrough infections even among fully vaccinated individuals. The Seventh circuit affirmed the district courts denial on other grounds, but made it a point to warn district courts that vaccination alone does not warrant denial of a 3582(c)(1)(A) motion where the

Page 15 of 30

PRO-SE APPELLANT BRIEF

individual may still be susceptible to infection), United States V. Sosa, 2022 U.S. Dist. LEXIS 12348 (S.D.N.Y, Jan. 24, 2022) (Sosa was diagnosed with Type II Diabetes and hypertension both of which can render individuals more vulnerable to COVID-19. As of January 24, 2022, 83 inmates at Reeves were confirmed to have active cases of COVID-19. For these reasons, a number of Courts in this district have recently granted Compassionate Release on the ground that the "widly contagious Omicron variant constitutes an extraordinary and compelling reason to grant the requested relief," United States v. Rose, 2022 U.S. Dist. LEXIS 706 (S.D.N.Y, Jan. 3, 2022), see also United States V. Brunetti, 2022 U.S. Dist. LEXIS 4604 (S.D.N.Y, Jan. 10, 2022), see Appellant DE 321 pages 5 through 12, see also Appellant DE 323 pages 3 through 9.

       THIRD: Vaccinated individuals can still become infected with COVID-19. The CDC acknowledges individuals can still get sick with COVID-19 after vaccination and it also reports that vaccinated individuals can continue to spread the disease, see CDC, The Possibility of COVID-19 after Vaccination; Breakthrough Infections Dec. 17, 2021 (available at; https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html)(last visited 3/11/2022), Most recently, there have been reports of more severe breakthrough cases in older, vaccinated adults. see Locklear, Mallory.

## PRO-SE APPELLANT BRIEF

severe breakthrough COVID-19 cases make boosters urgent Yale News Dec. 3, 2021 (available at: https://news.yale.edu/2021/12/03/severe-breakthrough-covid-19-cases-make-boosters-urgent) (last visited 3/11/2022), as well as breakthrough cases in individuals who were fully vaccinated with booster shot. see Reddy, Sumathi, Post-Booster Breakthrough COVID-19 Cases Are Happening, but Rarely The Wall Street Journal, Dec 6, 2021 (available at: https://www.wsj.com/articles/covid-19-breakthrough-can-happen-after-booster-in-rare-cases-11638795600) (last visited 3/11/2022). Importantly, in January 21, 2022, the CDC reported that 41.65% of reported COVID cases were breakthrough infections contracted by those vaccinated with a primary shot series and 18.2% of reported COVID cases were breakthrough infections contracted by fully vaccinated individuals with booster shots see CDC, Covid Data Tracker "Rates of COVID-19 Cases by Vaccination status and Booster Dose" Mar. 1, 2022 (available at: https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status) (last visited 3/11/2022).

In sum reinfection even after vaccination cannot be ruled out, particularly with variants of the Covid-19 virus that have become prevelant, and could be life threatening as here when In combination with Appellants Depressive order that worsened during the extreme Harsh Conditions and Lengthy Lockdowns for over 18 months, Appellants high blood Pressure, Asthma, Obesity,

PRO-SE APPELLANT BRIEF

and chronic inflammatory lung disease are not under control, cannot social distance, only about 10% of inmates and staff here at FCI-Gilmer wear masks this depite mandates. Constant breakthrough infections of the omicron and Delta virus variants here at FCI-Gilmer and the state of West Virginia, and appellant's co-morbid health conditions; Hypertension; Asthma, morbid obesity with a BMI of 49, severe sleep Apnea, significant vascular disease. chronic inflammatory lung disease, Lymphedema, pedal Edema, chronic gout, Allergic rhinitis, chronic sinusitis, provisional diagnosis of Lymphoma which has not been ruled out via biopsy, Abnormal configuration of the left hilar region which presents a bulging contour of the left cardiac border and slight compression of the body TII. Lymphadenopathy is noted in the appellant's AP window, subcarinal, precarinal regions of mediastum, as well as in the bilateral axillary regions, several regions of mild focal pleural thickening is noted in the prosterior aspect of the Appellant's left hemithorax, history of heart disease and bronchitis, and appellant is a former smoker.

Based on the cdc findings, the law, the long list of co-morbid health conditions, and all the factors advanced above, the appellant remains at high risk of serious illness or death should he remain at FCI-Gilmer this despite vaccination/booster shot. Respectfully, the word discretionary does not mean the District Court should deny appellants motion for Compassionate Release at all costs. consequently, this Honorable Second circuit should use it's discretion

PRO-SE APPELLANT BRIEF

to find that extraordinary and compelling circumstances support Compassionate Release.

11. Appellant is not a danger to the safety of the Community and his section 3553(a) factors counsel that compassionate Release is warranted

The Fourth circuit's ruling in McCoy has removed the requirement to determine whether a defendant seeking Compassionate release is a danger to the safety of others in the community, united States v. McCoy, 981 F.3d 271, 284-85 (4th cir, 2021), Even so, appellant nonetheless maintains that his release would not endanger the safety of any other person or the community, and that his section 3553(a) factors counsel that compassionate release is warranted as follows;

The District Court stated; "he induced at least 265 victims to invest in these fraudulant schemes, causing a total of $15,350,403 in loss", Id [324] order at page 2. Here, appellant vehemently disagrees and this misstatement has infected the entire proceedings. Prior to trial appellant received a 120 months plea offer from the government. Appellant proceeded to trial, was convicted, and received a sentence of 292 months imprisonment and 3 years of supervised release, Here, the government felt that 120 months was sufficient punishment for the crimes charged, However, after the trial conviction the appellant received a Trial Penalty of 172 additional months based on 4 levels "uncharged conduct", 2 levels "sophisticated means", 2 levels "obstruction of Justice", and the incorrect criminal

Page 19 of 30

## PRO-SE APPELLANT BRIEF

history category of IV instead of III. moreover, at sentencing the District Court applied the incorrect preponderance of the evidence standard instead of the clear and convincing evidence standard regarding the 172 months trial penalty. see PSR pages 17 and 18 paragraphs 44 through 60 and pages 19 through 22 paragraphs 67 through 76.

Here, it's also important to note: the above 2 levels for approximately $11,000,000 in loss and 2 levels for over 200 victims that relate to the uncharged Rockford Group scheme are based on ("The case agent advised that the exact amount of loss associated with this scheme is not able to be determined due to the extent, duration, and complexity of the scheme but amounts to approximately $11,000,000"). Id. at PSR page 13, paragraph 28. Respectfully, this does not satisfy the clear and convincing evidence standard.

Additionally, the District Court stated: "His total offense level was 37 and his history category was IV, leading to a sentencing guideline range of 292 - 365 months imprisonment." Id. at District Court [324] order page 2. Respectfully, here the District Court applied the incorrect advisable guideline range which affected Appellant's substantial rights as follows:

(i) The PSR incorrectly added 20 levels for a loss amount of $15,350,403 instead of adding 18 levels for the correct loss amount of $14,879,080. see PSR page 17 paragraph 44. Here, the PSR incorrectly included intended loss as follows:

Page 20 of 30

## PRO-SE APPELLANT BRIEF

Grayson Hewitt scheme - $4,293,803, UBS scheme - 59,600, and Rockford Group scheme - approximately $11,000,000. See PSR page 13 paragraph 28 "intended loss chart". Here, the PSR did not deduct dividend payments and customer refunds. The actual loss amount after dividend payments and customer refunds is: Grayson Hewitt scheme - $3,864,080.11. See Appellant J&C, Document 249, pages 6 and 8. UBS scheme - $15,000. See PSR page 13 paragraph 28, and Rockford Group scheme - approximately $11,000,000. See PSR page 13 paragraph 28. and

(ii) The PSR applied an incorrect criminal history score of 7 which establishes category IV instead of applying the correct criminal history score of 6 which establishes category III. Here, the PSR incorrectly states that on 4/23/2007 Appellant plead guilty to Robbery and received 2 criminal history points. See PSR page 20 paragraph 69. Emphasis Added! Appellant plead guilty to count one Information 54 of cr, 784 (Lmm)- misdemeanor which establishes 1 criminal history point not 2. The documents related to this misdemeanor conviction should not be sealed. FCI-Gilmer is currently on lockdown therefore appellant does not have access to his second floor legal locker. However, the Second circuit will later receive appellant's misdemeanor-plea agreement, information, and sentencing transcript if requested by this Honorable Court. The same apply's to Appellant's PSR objections DE 245 and 248. See Appellant DE 315 page 2.

Respectfully, appellant proceeded to trial under

<u>PRO-SE APPELLANT BRIEF</u>

actual innocence, was convicted, and sentenced to 292 months, with good time appellant has served 135 months custody which far exceeds the government plea offer of 120 months. The appellant is 50 years old, this punishment has had a deterrent effect and worsened appellants major depressive disorder due to the over 18 months of harsh conditions and lengthy lockdowns from the corona-virus pandemic, and appellant suffers from a number of serious co-morbid conditions including : Hypertension; Asthma; morbid obesity; severe sleep apnea, significant vascular disease; chronic inflamation lung disease; provisional diagnosis of Lymphoma; bulging contour of the left cardiac border; Lymphadenopathy is noted in appellants AP window, subcarinal, precarinal regions of the mediastum as well as in the bilateral axillary regions; Pleural thickening in the posterior aspect of left hemithorax; history of bronchitis and Heart disease; and appellant is a former smoker.

       Appellants age, severe punishment, worsening major depressive disorder, severe co-morbid health conditions, and up to 3 years of supervised release with conditions of home confinement, would increase appellants imprisonment to above 50%, further balance the 3553(a) factors, and foreclose the type of dangerousness that would argue against release. The Sentencing commission consistently found incarceration lengths of more than 120 months as here had a deterrent effect, see U.S. Sentencing commission, Length of Incarceration and Recidivism 4 (apr. 2020) (available at : https://www.ussc.gov/sites/default/files/pdf/research-and publications/research-publications/2020/20200429-recidivism sent Length.pdf) (last visited 2/22/2022).

PRO-SE APPELLANT BRIEF

Post Sentencing Rehabilitation: Here, appellant sincerely apologizes to USDCJ Israel Leo Glasser and to the government for his disruptive and disrespectful behavior during the District Court proceedings. From 2012 through 2014, appellant was taking prescription pills that didn't belong to him and therefore behaved like a crash dummy. Appellant has a history of drug abuse, see Appellant DE 323, Exhibits A and C, see [2-11 and 2-31] also DE 315 pages 12 and 13, see also Letter of Appellant A-92 through A-94. [2-32, 2-33, 2-34]

However, upon arrival to FCI-Gilmer in 2014, appellant chose to stop taking prescription pills that didn't belong to him and live a clean, normal, healthy, and productive life. From 2014 to present and still counting appellant remains drug free and has passed "all" BOP drug testing, regularly attends religious services, completed the HVAC vocational program, received his Associate Degree of science in Business and his Bachelor Degree of science in Business Management from Glenville state university, and was named to the Provost list in recognition of academic excellence in the fall 2019 and spring 2020, completed Drug Education Program, Decision making, critical thinking, Web Design, Adobe level 1, Develop Leadership, Problem solving, Financial Budgeting, and recently completed Parenting 1 and resume class under the First Step Act ("FSA"), see Appellant DE 315 page 13, DE 323 Exhibit M, and SRP progress Report A-95 through A-99. [2-35] [2-36, 2-37, 2-38, 2-39, 2-40]

Additionally, FCI-Gilmer, unit B-1, case manager mrs. Taylor ("mrs. Taylor") stated, "Inmate Liouni's arrived at FCI-Gilmer in September 2014. During his initial classification he was instructed to enroll in education programs and to obtain institutional

## PRO-SE APPELLANT BRIEF

employment. He continuously complied with the unit teams recommendations since that time, and as a result his custody classification will be reduced to a minimum security within the next six months". Id. at SRP progress Report A-95 through A-99 [2-36]. Today, Appellant has a minimum/camp security custody classification and a low recidivism score under the FSA, see custody classification form [2-41] 11 Points.

Appellant has also maintained employment. Mrs. Taylor stated: "Inmate Liounis is currently employed as a B1 unit orderly where he receives positive work evaluations. He complies with all required tasks and completes them in a timely manner. Prior to this employment, Inmate Liounis has continuously maintained institutional employment and his work evaluations were always positive". Id. see SRP-progress report A-95 through A-99 [2-36], see also Letter in Support by FCI-Gilmer, B-1 unit counselor, D. Kemper (Mr. D. Kemper") A-103, see also Appellant DE 315 pages 13 and 14.

Appellant is a model Inmate. Appellant received one minor 306 violation in over 10 years of incarceration. Mrs. Taylor stated: "Inmate Liounis has maintained clear conduct since 2014. He complies with all institutional rules and regulations, and he follows instructions given by staff members. He has developed a good rapport with other inmates and staff. Additionally, he has assisted other inmates with procedural documents". Id SRP progress report A-95 [2-37] through A-99, see also In Support Letter by Mr. D. Kemper A-103.

Appellant is complying with his FRP payments. Mrs. Taylor stated: "Inmate Liounis is participating in the Inmate Financial

PRO-SE APPELLANT BRIEF

Responsibility Program and is making his court ordered payments as agreed. Id SRP progress report A-95 through A-99, see also Appellant DE 315 page 14.

Appellant's post sentencing conduct strongly supports a sentence reduction. Appellant's record while in custody shows that he is a model inmate and that he is committed to his faith, education, improvement, relationships and work duties. Appellant has had an overall positive adjustment to incarceration and has spent the last 8 years drug free, employed, voluntarily participating in programs, and preparing to be a productive member of society this despite having a 292 months sentence. Appellant is 50 years old and is proudly the first in his immediate family to graduate college. Appellant has demonstrated that he is capable of living a normal, drug free, and productive life as a law abiding citizen. Respectfully, the appellant today is not the same person that left federal prison in 2007. In 2007 Appellant was addicted to drugs and none of the above applied. See Letter of Appellant A-92 through A-94, see also Appellant DE at pages 14 and 15 and DE 321 page 18.

Lastly, the District Court stated: "His claims of rehabilitation also ring hollow given his continued denial of responsibility" Id. District Court [324] order page 6. Here, Appellant was falsely accused of inducing atleast 265 victims to invest in the Grayson Hewitt, UBS, and Rockford Group schemes, causing a total of $15,350,403 in loss, see

Page 25 of 30

PRO-SE APPELLANT BRIEF

District Court [324] order page 2 [2-12], Respectfully, Appellant proceeded to trial under-Actual innocence and denial of responsibility is not a reason for the District Court to not consider Appellants successful Post sentencing rehabilitation efforts as "one among other factors" establishing extraordinary and compelling reasons for release, see united states v, Harris, Case 21-6781 (4th cir, march 4, 2022) "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law" united states v, Jenkins, 22 F. 4th 162, 167 (4th cir, 2021), the court has recognized that successful rehabilitation efforts can be considered as "one among other factors" establishing extraordinary and compelling reasons for release, united states v, McCoy, 981 F.3d at 286 n. 9 (4th cir 2021). By categorically refusing to consider the impact of Appellants' rehabilitative efforts, in combination with the other circumstances Appellant presented, when conducting the extraordinary and compelling reasons analysis, the District court committed an error of law.

Moreover, Appellant's post sentencing Rehabilitation is relevant under 18 U.S.C, section 3553 (a) and Pepper v, united states, 562 U.S, 476, 491 (2011) ("evidence of postsentencing rehabilitation may be highly relevant to several of the section 3553 (a) factors"), see also united states v, martin, 916 F.3d at 378, and united states v, McDonald, et al, 986 F.3d 402, 412 (4th cir, 2021) (where

PRo-SE APPELLANT BRIEF

substantial mitigating rehabilitation evidence is introduced and not available at the initial sentencing hearing, a court must weigh that conduct and if in its discretion the court still believes that positive trajectory deserves no rehabilitation, it shall provide an individualized explanation for its decision), and United States v. Nabaya, 2021 WL 54361 at *3 (E.O. Va, Jan, 6, 2021) (finding requirement to consider post-conviction evidence also applicable in compassionate release matters filed under 18 U.S.C, section 3582 (c)(1)(A) )).

RELEASE PLAN: Appellant has a strong network of people who are willing to support him and to keep him safe upon his release, upon release, Appellant will live with his fully vaccinated and boosted parents at their home located in Toms River New Jersey. Appellant's parents live in a 4 bedroom spacious home; Appellant will have his own bedroom which provides security and stability. Furthermore, Appellants parents are financially stable, will support appellant in all ways, and will allow Appellant to drive their second vehicle to and from work. The Appellant will continue to regularly attend St. Barbara's Greek orthodox church together as a family and Appellant will assist the church as a volunteer, see letter of Mary and George Liounis, 2-42 A-100 through A-102, see also Appellant DE 315 page 24, Additionally, if released early, Appellant will be employed full time by Freedom Electric and receive full benefits, SEE Appellant DE 319 "Letter of Employment submitted by Angelo Tzoulis, will remain drug free and regularly attend ocean medical Services

Page 27 of 30

## PRO-SE APPELLANT BRIEF

Addiction treatment Center and Evolve Recovery Center, both located in Toms River N.J., will help his 79 year old parents with any physical home maintenance, cooking, cleaning, shopping, yard work, chores, and will take his parents to their doctor appointments, will obtain his Masters Degree in Counseling, will obtain his driver's license which was valid and clean prior to incarceration, but has expired, and will obtain his birth Certificate and social Security card, That are in the possession of scott paccione, a friend of the Appellant. see Letter of Appellant A-92 through A-94. 2-32, 2-33, 2-34 see also Appellant DE 315 pages 24 and 25, see also Letter of mary and George Liounis A-100 through A-102. 2-42

INADEQUATE MEDICAL CARE : (i) Appellant is a chronic care patient who suffers from co-morbid conditions including but not limited to severe sleep Apnea. BOP Aerosol Procedures/COVID-19 dated 5/2/2020 state, "CPAP must be set up and used with a full-face non vented CPAP mask with an inline viral filter attached to the intake and exhalation ports. The viral filters should be changed daily." Id Appellant DE 323 Exhibit D and E. 2 43, and 2-44 Here, at FCI-Gilmer none of the 10 Aerosol CPAP procedures were implemented. However, Appellant confirmed that FCI-Williamsburg did implement all 10 procedures. The Negligence, co-morbid conditions and breakthrough infections here at FCI-Gilmer puts Appellant in danger. 2-43 and 2-44 see Appellant DE 323 page 10 and Exhibits D and E. If released early Appellant will live with his fully vaccinated and boosted parents, have his own room, and implement all of the Aerosol CPAP procedures, see Appellant DE 315 p. 24 "release Plan"

(ii) Appellant is a victim of the September 11, 2001 attacks on New York City ("911"). After 911 Appellant became ill, see

<u>PRO-SE APPELLANT BRIEF</u>

Appellant DE 315 page 2, DE 321 pages 3 through 4, and DE 323 pages 11 through 18. For over 9 months Appellant has been severely suffering from the following: <u>Neck/Throat</u> - (Enlargement of Lymph Nodes - see Pro-se Appellant Brief Exhibit 7), (sharp pain, discomfort, throat closing, trouble swallowing, shortness of breath, heat and sweats, pressure, drooling, tightness, stiffness, and choking on saliva - see Appellant DE 323 Exhibits F, G, L "Emails to medical"), (provisional Diagnosis of Lymphoma - see Gov't 320-1 at 83), (Small, slightly heterogeneous thyroid gland - see Pro-se Appellant Brief Exhibit 19), (Pedal Edema - see Gov't 320-1 at 1), (lymphedema - see Gov't 320-1 at 1), (mild to moderate Lymphadenopathy is noted in the AP window, subcarinal, precarinal regions of the mediastum as well as in the bilateral axillary regions - see Gov't 320-1 at 85), moreover, FCI-Gilmer lost it's contract with WVU - United Hospital Center. Therefore, the delay to see an Endocronologist and oncologist will continue along with the severe suffering. If released early, all of Appellants 911 related injury's will be financially covered and medically treated by the September 11th Victim Compensation Fund. In Support see House Subcommittee Witnesses Savage BoP's COVID Response January 21, 2022 - Appellant DE 323 pages 14 through 18.

<u>CONCLUSION</u>

Appellant humbly asks this Honorable Second circuit to find that: when considering "all" the following factors together: Appellants co-morbid conditions make him particularly susceptible to contracting COVID-19 while at FCI-Gilmer this despite vaccination. Break through infections of COVID-19 among fully vaccinated persons remain, particularly with the emergence of the omicron B1.1.529 and BA.2 and Delta B.1.617.2

<u>Page 29 of 30</u>

PRO-SE APPELLANT BRIEF

virus variants, vaccination does not defeat every underlying health condition that might otherwise render an individual eligible for Compassionate Release ("CR"), cannot social distance, consider 3553(a) factors if sentenced today, Inadequate medical Care, Post sentencing Rehabilitative efforts, severe punishment, deterrent effect, and worsening of major depressive disorder due to almost 2 years of harsh conditions and lengthy lockdowns from the coronavirus pandemic, model Inmate, Age, non violent offense, with good time appellant served over 135 months of his 292 months sentence, low recidivism score under the FSA, minimum/camp security custody classification, Trial penalty of 172 months, Positive evaluations by case manager Mrs. Taylor, Letter submitted by counselor D. Kemper, and release plan, Collectively creates extraordinary and compelling reasons warranting a reduction of sentence to time served or up to 3 years of Supervised release with a condition of Home Confinement, or respectfully, order a hearing directing the District court to (i) conduct a forensic accounting of loss and victim amounts for the Rockford group, UBS, and Grayson Hewitt schemes, (ii) Apply the clear and convincing evidence standard, (iii) Apply the correct Advisable Guideline range, and (iv) consider "all" the above factors together before deciding if extraordinary and compelling reasons exist to warrant a reduction of Sentence, oral argument, appointment of Counsel, or any other appropriate and just relief by the Second circuit.

Date: May 16, 2022                    Respectfully Submitted

(Total words 6510)                    Peter L
                                      Peter Liounis # 48332-054

I, Peter Liounis, declare that all the foregoing is true and correct under penalty of perjury pursuant to Title 28 U.S.C. section 1746.

Date: May 16, 2022                    Peter L
                                      Peter Liounis # 48332-054

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America

v.

Peter Liounis

**CERTIFICATE OF SERVICE***

Docket Number: 22-716

I, Peter Liounis , hereby certify under penalty of perjury that
(print name)

on May 16, 2022 , I served a copy of Pro-Se Appellant Brief, Pro-se
(date)

Certificate of compliance with word or page Limits, motion Information statement
(list all documents)

by (select all applicable)**

___ Personal Delivery      ✓ United States Mail      ___ Federal Express or other
                                                          Overnight Courier

___ Commercial Carrier      ___ E-Mail (on consent)

on the following parties: By certified mail/signature confirmation 7019 0700 0000 5743 9488

| AusA, Jonathan P. Lax, USAO-EDNY, 271 cadman Plaza, East, Brooklyn | | NY | | 11201 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

May 16, 2022
Today's Date

Peter
Signature

Certificate of Service Form (Last Revised 12/2015)

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): _22-716_   2022 MAY 20 PM 3:16   Caption [use short title]

Motion for: _Compassionate Release_   United States of America V. Liounis

Set forth below precise, complete statement of relief sought: _C see Pro-se Appellant Brief pages 29 & 30 (conclusion)_
_Grant motion for Compassionate Release, reduction of sentence to time served and/or 3 years or less_
_supervised release with a condition of Home Confinement, or order a hearing directing the District Court_
_to (i) conduct a forensic accounting of loss and victim amount for Rochford Group, UBS, and Grayson Hewitt_
_schemes, (ii) Apply the clear and convincing evidence standard, (iii) Apply the correct Advisable Guideline range;_
_iv) Consider all the factors together (see long list of factors - conclusion pages 29 & 30) before deciding if_
_extraordinary and compelling reasons exists to warrant reduction of sentence, oral argument, appointment of counsel._

MOVING PARTY: _Pro-se Peter Liounis #48332-054_   OPPOSING PARTY: _United States of America_

☐ Plaintiff   ☐ Defendant
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: _____   OPPOSING ATTORNEY: _JONATHAN P. LAX_
[name of attorney, with firm, address, phone number and e-mail]

_Federal Correctional Institution - Gilmer_   _U.S. Attorney's office for EDNY_
_P.O. Box 6000_   _271 Cadman Plaza, East_
_Glenville WV 26351_   _Brooklyn NY 11201_

Court- Judge/ Agency appealed from: _Senior United States District Court Judge Israel Leo Glasser_

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain): _Certified mail / Signature_
_Confirmation No. 7019 0700 0000 5743 9488_

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:
Has this request for relief been made below? ☐ Yes ☑ No
Has this relief been previously sought in this court? ☐ Yes ☑ No
Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Is oral argument on motion requested? ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:
_Pete L_   Date: _5/16/2022_ Service by: ☐ CM/ECF ☑ Other [Attach proof of service]

Form T-1080 (rev.12-13)

Peter Licunis
#48332-054
Federal Correctional Institution - Gilmer
P.o. Box 6000
Glenville WV 26351













| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)* C. Date of Delivery |
| 1. Article Addressed to: clerks office<br>united states Court of Appeals<br>united states court house<br>40 Foley square<br>New York NY 10007 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 6636 1028 9579 93 | 3. Service Type ☐ Priority Mail Express®<br>☐ Adult Signature ☐ Registered Mail™<br>☐ Adult Signature Restricted Delivery ☐ Registered Mail Restricted<br>☑ Certified Mail® Delivery<br>☐ Certified Mail Restricted Delivery ☑ Signature Confirmation™<br>☐ Collect on Delivery ☐ Signature Confirmation<br>☐ Collect on Delivery Restricted Delivery Restricted Delivery<br>☐ Insured Mail |
| 2. Article Number *(Transfer from service label)*<br>7021 2720 0001 6053 2741 | ☐ Insured Mail Restricted Delivery<br>(over $500) |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |



CERTIFIED MAIL

7021 2720 0001 6053 2741

USM4LD
SDNY

Legal
mail
=

clerks office
united states Court of Appeals
united states court house
40 Foley square
New York NY 10007

(appellant Brief)